# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00257-CR

**Albert M. Jaimes, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW OF COMAL COUNTY
## NO. 2001-CR-2021, HONORABLE BRENDA CHAPMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Albert M. Jaimes of criminal mischief for running his pickup truck into his ex-wife's car and causing between $500 and $1500 in damage. *See* Tex. Pen. Code Ann. § 28.03 (West Supp. 2004). The court assessed sentence at 250 days in jail and a $1500 fine, but probated the jail sentence for 18 months. Appellant complains that the State asked an improper commitment question at voir dire and that factually insufficient evidence supports the conviction. We will affirm the judgment.

## BACKGROUND

Because appellant challenges the factual sufficiency of the evidence to support the judgment, we will review the testimony and evidence presented to the jury.

Appellant's ex-wife, Maricela Jaimes, testified that appellant damaged her car on August 26, 2001 because she would not tell him whom she was dating. They were divorced in May 2001. Ms. Jaimes testified that, at about 1:30 a.m. on August 25, 2001, she and appellant had a conversation that turned into an argument. After Ms. Jaimes ended the conversation and went inside her house, her car was damaged by a forty-pound rock being dropped onto the windshield. Although she believed appellant damaged the car, further testimony indicated that appellant was acquitted in a separate trial regarding that incident. Around 6 a.m. the next day, as she was driving to work in her rented Saturn passenger car, she noticed that appellant was driving in front of her. She recognized both him and his aqua Ford F-150 pickup; she testified that he was in his Army uniform. (He had duty in San Antonio that weekend.) She said that, after they were on the road to Seguin, he blocked her progress and demanded to know who she was dating. When she refused to tell him, he drove away, in the process hitting her car with the front of his pickup, damaging her mirror and denting the car; she believed the damage was intentional. She believed he struck her car only with the bumper, but was not certain. Her insurance company paid $1538 to repair the rental car.

Ms. Jaimes reported the incident to the New Braunfels police department and to appellant's commanding officer. She denied trying to ruin appellant's Army career, saying that she hoped the commanding officer could intercede and stop the confrontations, which she feared were escalating. She also testified that she still liked appellant, that she knew he had worked hard for twenty-two years to build his career, and also that she had a financial interest in his continued success because his income paid for child support. Ms. Jaimes testified that appellant's workplace

2

in San Antonio was 30-40 minutes' drive from her house in New Braunfels, and that San Marcos was about 20 minutes from her house.

Ms. Jaimes also testified that appellant called his children only once and, on that occasion, talked so rudely that he made their daughter cry. Ms. Jaimes testified that she had a protective order against appellant, but that he and their daughters were free to contact each other when she was not around. The protective order was issued September 27, 2001.

During cross-examination, the court admitted photographs of appellant's pickup, bearing the date-stamp of August 26, 2001. The photographs, apparently taken by appellant, show no major damage to the pickup. The only damage evident is a small piece missing from the rubber on top of the left rear bumper. None of the photographs shows the left corner of the front bumper.

New Braunfels police officer James Rackley testified that he wrote Ms. Jaimes's report of the incident. He said she told him that she and appellant had been talking with their vehicles side by side, that the conversation turned confrontational, and that appellant sped off and sideswiped her car. Rackley noted damage on the driver's side of her car to the mirror, the left rear quarter panel, and the left rear tail-light assembly. Rackley testified that this damage was consistent with being hit by a pickup bumper.

Ernest Rubio testified that he was in an Army Reserves unit with appellant. In response to Ms. Jaimes's report of the incident, Rubio inspected appellant's pickup on August 26, 2001. He testified that the pickup had minor dings on the driver's door and a smudge of rubber and chip missing from the rear driver's side bumper; he opined that all this damage was consistent with the type of minor damage caused in parking lots.

3

Roland Constantino testified about his September 10, 2001 examination of appellant's pickup. Constantino, a service writer at a car repair shop, had been estimating the cost to repair damaged vehicles for about 12 years. He found door dings and minor scratches to the left fender. He opined that, if the pickup had caused over $500 damage to another vehicle, he would have found more damage to the pickup. He did not check to see whether the pickup had been repaired recently. He agreed on cross-examination that a bumper could be quickly replaced, but did not believe that the bumper on the pickup was new. He also testified that finding an intact used bumper that was not smashed would be a challenge, but not impossible.

Appellant denied Ms. Jaimes's version of events. He denied being around Ms. Jaimes on the morning of the incident. He testified that he left his then-girlfriend Mary Perez's house in San Marcos a little after 5 a.m., arrived at work in San Antonio at about 6:30, opened up the office, and called Perez. He testified that Perez's house was about 30 minutes from New Braunfels, where Ms. Jaimes's house was, and that his work was about 50 miles from Ms. Jaimes's home; he estimated the trip from Perez's house to his work would take about an hour and a half. He said he was shocked when his commanding officer later that day told him of Ms. Jaimes's accusation. Appellant denied the accusation and told him where he had spent the night; the officer called Perez, who confirmed his alibi. He and his commanding officer then walked down and inspected his pickup. Appellant brought his other vehicle, a van, up for a similar inspection. He said he later took the pickup to Constantino two weeks later only in response to a claim made against his insurance. He explained that the nick on the rear left bumper occurred when he backed into a loading dock. Appellant denied replacing the bumper or repainting the pickup in any way.

4

He admitted that he had not contacted their daughters, but blamed the tension with his ex-wife and his concern that any attempt to contact them would make things worse in this case and in his career; he testified that their daughters called him at work. He denied that he made their daughter cry over the phone. He said that Ms. Jaimes would not have called his commanding officer if she did not want to hurt his career. He testified that a domestic violence conviction would end his military career.

Perez testified that appellant spent the night at her house, left her house shortly after 5 a.m. on August 26, 2001, and called her when he arrived at work at around 6:30 a.m. She confirmed that he was wearing his uniform. She testified that she no longer dated appellant, although he still came by her house.

## DISCUSSION

Appellant raises two complaints against the judgment. He contends that the State asked an improper question during jury voir dire, trying to induce a commitment from jurors. He also complains that the evidence is factually insufficient to support the judgment against him.

Appellant complains that the court erred by allowing the State to ask jury panelists to commit to resolving or refraining from resolving an issue based on one or more facts contained in the question. *See Standefer v. State*, 59 S.W.3d 177, 189 (Tex. Crim. App. 2003). The *Standefer* court distinguishes between a permissible question—*e.g.*, whether the juror could be fair if the victim was a nun—and an improper commitment question—*e.g.*, whether the juror could consider probation if the victim was a nun. *See id.* Appellant complains of the following question:

5

> If a person had a little more rougher impact with the decision you made—let's say you found somebody guilty of DWI and the person is a truck driver and you know it's going to affect his commercial license and you know that's going to affect him more than, say a college student, it's going to affect his livelihood. How so you feel—let's say in your mind you're convinced of the DWI. Would that impact your decision, the fact that it's going to affect him a little bit more, as far as guilt/innocence?
>
> Appellant argues that this question is improper because it tests the predispositions of the juror only in the context of a conviction.

Appellant's point of error fails. He did not object to this question in the trial court, and thereby failed to preserve it for appellate review. *See* Tex. R. App. P. 33.1(a)(1); *see also Cade v. State,* 795 S.W.2d 43, 45 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). We do not find the existence of this question in the record to be fundamental error, reviewable without need for objection. *See Cade*, 795 S.W.2d at 45. We overrule point of error two.

By point of error one, appellant contends that the evidence is factually insufficient to support the verdict. When reviewing the factual sufficiency of the evidence, we do not view the evidence in the light most favorable to the verdict. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). The jury is the sole judge of the weight and credibility of the testimony, and we must guard against substituting our own judgment in these matters. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We may, however, consider matters bearing on credibility that can be fully determined from a cold appellate record—*i.e.*, those that do not concern the witnesses' physical appearance, demeanor, and cadence of speech. *See Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). "A decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State." *Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997). We can set aside the verdict or judgment only when the factual finding is against the

great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. We are not free to set aside a jury verdict merely because we feel that a different result is more reasonable. *See id.* at 135.

Appellant concedes that the testimony of the ex-spouses amounts to a swearing match, but argues that the evidence of lack of damage to his pickup is uncontroverted and overwhelms Ms. Jaimes's testimony. Both his army colleague and the service repair writer testified that his pickup had no damage consistent with $1500 of damage to another car. The photographs of his pickup, apparently taken on the day of the alleged incident, do not illustrate any large-scale damage to the pickup.

Although the case is a close one, we do not find that the verdict is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. The photographs of the pickup are not conclusive evidence. While they do not show obvious damage, they also do not show the left corner of the pickup's front bumper—a part of the pickup likely involved in the accident as described by Ms. Jaimes. Further, there is little evidence regarding what sort of damage should be apparent on a pickup that inflicted between $500 and $1500 in damage to a Saturn passenger car by damaging a rearview mirror, the left-rear quarter panel, and the left taillight assembly. Although appellant's army colleague and the service repair writer testified that they did not see the type of damage they would expect to see, neither did they explain what damage should be apparent on the pickup. Even accepting appellant's version of his departure and arrival times does not eliminate the possibility that he stopped in New Braunfels and engaged in the conduct described. Ultimately, in the absence of more definitive objective evidence, the decision turns on the credibility of the

witnesses.  In addition to seeing the pictures, the jury heard Ms. Jaimes, and heard appellant, his

army colleague, the service repair writer, and his ex-girlfriend.  They chose to credit Ms. Jaimes.

The record does not permit us to reject their choice.  We overrule point of error one.

## CONCLUSION

Having overruled both points of error, we affirm the judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   January 29, 2004

Do Not Publish