WILSON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-256-CR

DANA LESLIE WILSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. INTRODUCTION

A jury convicted Appellant Dana Leslie Wilson of attempted capital murder after a plea of not guilty and assessed punishment at twenty years’ confinement.  In one point, Wilson complains that the trial court improperly restricted her voir dire on factual allegations contained in the indictment that the State was bound to prove beyond a reasonable doubt. 

II. FACTUAL AND PROCEDURAL BACKGROUND

Wilson was a twenty-four-year-old student at Texas Wesleyan University on November 14, 2003.  That morning, she awoke and gave birth to a baby boy in her bathroom.  The baby was healthy when he was born.  Wilson put the baby in a plastic bag in a trash can and tied the bag shut.  She placed that bag, along with other trash, into a larger trash bag and tied it shut.  She left her home to go to class.  On the way, she threw the trash bag into a nearby dumpster.  When Wilson arrived at class, her friend noticed that she looked unwell.  Wilson told her friend she had given birth to a baby that morning and had taken the baby to a hospital.  Wilson’s friend urged her to return home and get medical attention.  Wilson did.  

That same morning, Katherine Marquis, a veterinarian technician at a local clinic, went to the dumpster and heard a noise.  She thought the noise was from a cat.  She returned to the clinic and reported what she heard to the veterinarian, Dr. Henry Chenault.  He went to the dumpster, climbed in, and found the trash bag from which the noise was coming.  After carrying the bag back to the clinic, Dr. Chenault opened the bag and found a baby inside.  The baby was taken to the hospital where the doctors determined that the baby was newly born.  Tests revealed that the baby had suffered brain damage caused by oxygen deprivation as well as blood loss through the cut umbilical cord.  The baby was diagnosed with cerebral palsy.   

Wilson’s friend eventually called the police department after her mother told her that a baby had been found in a dumpster.  Wilson was charged with attempted capital murder.  

Before voir dire began, the State urged a motion in limine so that the defense could not go into the facts of the case when questioning the potential jurors.  The trial court granted the motion in limine.  Upon the defense counsel’s request for the court to clarify its ruling, the court explained that the parties should not go into the specific factual allegations of the case.  This restriction included any mention that the baby was placed inside a plastic bag or that he was abandoned in the dumpster, because including such facts would violate 
Standefer.
 
See Standefer v. State
, 59 S.W.3d 177, 179-82 (Tex. Crim App. 2001).  The court also told the attorneys that if anything came up that the attorneys felt should be made more specific, they should approach the bench to discuss the issue.  During voir dire, Wilson’s counsel did not approach the bench to obtain a ruling on any specific question that he wanted to ask.  

III. VOIR DIRE

In Wilson’s sole point, she argues that the trial court improperly restricted her voir dire on factual allegations contained in the indictment that the State was bound to prove beyond a reasonable doubt.  The State maintains that Wilson failed to preserve any error for review because she bases her claim on appeal under the Texas Constitution but she failed to object on that basis at trial.  The State also contends that Wilson failed to preserve any error because she never proposed any questions that she wanted to ask the jury panel.  Alternatively, the State argues that the trial court did not abuse its discretion by refusing to allow Wilson to go into the facts of the case during voir dire. 

A. Preservation of Error

For an issue to be preserved on appeal, there must be a timely objection that specifically states the legal basis for the objection.  
Rezac v. State, 
782 S.W.2d 869, 870 (Tex. Crim. App. 1990).  Generally, if the appellate record adequately shows that the trial judge and opposing counsel were aware of the substance of a defendant’s objection, thereby meeting the purpose of an objection, the objection is preserved for appellate review. 
 Thomas v. State, 
723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

The State argues that Wilson’s counsel did not preserve error for review.  We disagree.  The record reflects that both the trial judge and the prosecutor were aware that the defense disagreed with the court’s ruling and were aware of the substantive reasons for the defense’s objections.  The first objection came after the State made a motion in limine for purposes of voir dire.  The State asked the court to limit the defense to stating only the elements of the alleged crime and not any specific facts when questioning potential jurors.  In response to this, Wilson’s counsel stated that he wanted to specifically state the manner and means of the crime when asking the venire panel whether or not they could give the full range of punishment in this case.
(footnote: 2)  The court overruled his objection, ruling that both sides could only state that the “manner and means” of the crime were attempted capital murder of an individual under six years of age and that a deadly weapon was used.  The second objection came when Wilson’s counsel wanted to specifically state the manner and means alleged in the indictment to question the jurors in regards to their exposure to media coverage.  The State objected to this request, defense counsel responded by explaining why he desired to ask this question, and the judge ultimately concluded that defense counsel could not bring the specific facts up in front of the entire panel.  

To the extent Wilson argues on appeal that the trial court misinterpreted 
Standefer 
and improperly restricted the scope of voir dire, we hold that she adequately preserved error.  Both the court and opposing counsel were made aware that the defense objected to the exclusion of the manner and means of the crime in regard to questioning potential jurors on range of punishment and their possible media exposure; thus, defense counsel made the substance of his objections clear. 
 See Thomas, 
723 S.W.2d at 700.

But to the extent Wilson argues that 
Standefer
 itself improperly truncates a defendant’s absolute right to voir dire guaranteed by the Texas Constitution, we hold that she failed to preserve error.  Nothing in the record suggests that Wilson challenged the constitutionality of the limits imposed by 
Standefer 
on voir dire.  Thus, we conclude that Wilson has waived any such complaint for appeal, and we will restrict our analysis to the trial court’s restriction of voir dire under 
Standefer
.
(footnote: 3)

B. Restriction on Voir Dire

To determine whether or not the trial court improperly restricted Wilson’s voir dire, we must examine the court’s reasoning in excluding the specific facts of the offense.  
We leave to the trial court’s discretion the propriety of a particular question, and we will not disturb the trial court’s discretion absent an abuse of that discretion. 
 Sells v. State, 
121 S.W.3d 748, 755 (Tex. Crim. App.), 
cert. denied, 
540 U.S. 986 (2003); 
Barajas v. State,
 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).
  A trial court abuses its discretion only when it prohibits a proper question about a proper area of inquiry.  
Barajas, 
93 S.W.3d at 38.

The trial court stated that the inclusion of specific facts into the questions would violate 
Standefer
. 
 
In 
Standefer,
 the court of criminal appeals 
defined the circumstances under which voir dire questions will constitute improper commitment questions.  
Standefer,
 59 S.W.3d at 179. 
 
Commitment questions are those questions that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact.  
Id.
  Not all commitment questions are improper.  
A commitment question is proper when the law requires jurors to make certain types of commitments.  
Id. 
 Thus, the court must decide whether the question was proper or improper. 
 Id. 
at 181-82.  For a question to be a proper commitment question, one of the possible answers to the question must give rise to a valid challenge for cause. 
Id. 
at 182.  A potential juror may be properly challenged for cause and removed “if he cannot impartially judge the credibility of a witness.”  
Ladd v. State, 
3 S.W.3d 547, 560 (Tex. Crim. App. 1999), 
cert. denied,
 529 U.S. 1070 (2000).  However, even if a question meets the “challenge for cause” requirement, the inquiry does not end there because even a proper commitment question can become improper if the question includes facts in addition to those necessary to establish a challenge for cause.  
Standefer,
 59 S.W.3d at 
182.
  In other words, a proper commitment question must contain only those facts necessary to test whether a prospective juror is challengeable for cause. 
 
Id.
 at 
181.

Here, Wilson 
argues that the trial court should have permitted her attorney to include the specific facts regarding the “manner and means” of the offense when asking questions to the prospective jurors concerning their ability to give the full range of punishment.
(footnote: 4)  The trial court determined that the inclusion of the specific facts in connection with punishment-range questions would violate 
Standefer.
  A question about a juror’s ability to consider the full range of punishment for a particular offense is a proper commitment question.  
See id.
  
But 
the question in this case would have shifted from a proper commitment question to an improper one had the judge permitted counsel to include the specific facts of the offense as defense counsel requested because it would have included facts in addition to those necessary to establish a challenge for cause.  The only facts necessary to establish a challenge for cause when considering whether the jurors could give the full range of punishment were specific elements of the offense, 
namely attempted capital murder of an individual under six years of age and that a deadly weapon was used.  
See
 
Tex. Penal Code Ann.
 §
 19.03(a)(8) (Vernon 2005).  Therefore, the trial court was correct in excluding the specific facts about the baby being placed in a bag and into a dumpster and only allowing the elements of the offense to be considered.  We hold that the trial court did not abuse its discretion, and we overrule Wilson’s sole point.

IV.  CONCLUSION

Having overruled Wilson’s sole point, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL F: GARDNER, WALKER, and MCCOY, JJ.

MCCOY, J. filed a concurring opinion.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  September 28, 2006

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-256-CR

DANA LESLIE WILSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

CONCURRING MEMORANDUM OPINION
(footnote: 5)

------------

I agree with the judgment of the majority in this case, but concur to express a concern.  
Like one of the four dissenters in 
Standefer
, 

I cannot fathom a reason—much less a principled reason—for there to be in voir dire practice such a disparity between civil and criminal cases. . . . 

A civil litigant in a law suit in which only property is at stake has a greater right to question potential jurors—and thus, a greater right to a fair and impartial jury—than a criminal defendant whose liberty or life is at stake.

Standefer v. State
, 59 S.W.3d 177, 185-86 (Tex. Crim. App. 2001) (Price, J., dissenting).  
Standefer
 prohibits certain questions from being asked of the jury, not the factual allegations made by the State being presented to the jury.  I cannot imagine why a criminal defendant, whose liberty is at stake, cannot present to the jury panel at least the facts contained in the indictment, as was prohibited here.  Punishment aside, there may be jurors so biased because of a specific set of facts alleged in a case that the defendant cannot receive a fair trial.  Surely, the defendant is entitled to determine the attitudes of the jurors based on the specific factual allegations of the case, and absolutely at least as recounted in the indictment, a public document!

BOB MCCOY

JUSTICE

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  September 28, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2: The defense wished to include the specific facts of the offense, namely that it involved the attempted capital murder of a newborn by placing the baby in a bag and then into a dumpster. 

3:
Moreover, Wilson did not adequately brief her constitutional challenge to 
Standefer
.  
See 
Tex. R. App. P.
 38.1(h) (providing that an appellate court may properly overrule an issue or point as inadequately briefed if a party provides no argument or legal authority to support its position); 
Tong v. State, 
25 S.W.3d 707, 710 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 1053 (2001).

4: While Wilson’s trial court objections rested on two grounds (punishment phase and media exposure), it appears that her main contention on appeal lies with the limit on counsel’s ability to include specific facts when questioning prospective jurors on whether they could give the full punishment. 

5:
See 
Tex. R. App. P. 
47.4.