**Jack Krohn STANDEFER, Appellant,**

v.

**The STATE of Texas.**

No. 778–99.

Court of Criminal Appeals of Texas.

Oct. 31, 2001.

Thomas Morgan, Midland, for Appellant.

Jeffrey L. Van Horn, First Asst. State Atty., Austin, for State.

### *OPINION*

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY and COCHRAN, JJ., joined.

In the present case, the trial court prohibited appellant from asking prospective jurors the following question during voir dire: "Would you presume someone guilty if he or she refused a breath test on their refusal alone?"[1] The trial court found that "requesting them [prospective jurors] to make a commitment of that sort would be improper voir dire." The Court of Appeals reversed, holding that the question was a proper attempt "to discover whether any venireperson would have an automatic predisposition to find a person guilty simply because he refused to take the breath test, thereby rendering them unable or unwilling to consider all of the evidence in determining the intoxication issue."[2] We granted the State's petition to determine when a voir dire question calls for an improper commitment. We will reverse.

### 1. What is a commitment question?

 "[A]n attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts."[3] The rule is easily stated but has not been so easily applied. Nevertheless, while caselaw has not always been clear and consistent, a few common principles

are apparent. Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. Often, such questions ask for a "yes" or "no" answer, in which one or both of the possible answers commits the jury to resolving an issue a certain way. For example, the following question seeks to elicit a commitment from jurors to convict a person of a drug offense if that person is found with a residue amount of cocaine in a crack pipe: "If the evidence, in a hypothetical case, showed that a person was arrested and they had a crack pipe in their pocket, and they had a residue amount in it, and it could be measured, and it could be seen, is there anyone who could not convict a person, based on that."[4] A commitment question can also be a question that asks a prospective juror to *refrain* from resolving an issue on the basis of a fact that might be used to resolve the issue. For example, a question may attempt to secure a commitment to refrain from resolving the punishment issues in a capital case on the basis of victim impact evidence:

Let us assume that you are considering in the penalty phase of any capital murder case, okay? And some of the evidence that has come in shows that the victim's family was greatly impacted and terribly grieved and greatly harmed by the facts.... Can you assure us that the knowledge of those facts would not prevent you or substantially impair you in considering a life sentence in such a

---

1. Defense counsel later gave an alternate phrasing of the question: "If someone refused to take a breath test, would you presume such a person in your mind to be intoxicated by virtue of refusing a breath test alone?"

2. *Standefer v. State,* 2 S.W.3d 23, 26 (Tex. App.—El Paso 1999).

3. *Allridge v. State,* 850 S.W.2d 471, 480 (Tex. Crim.App.1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993).

4. *Atkins v. State,* 951 S.W.2d 787, 789 (Tex. Crim.App.1997).

case? [5]

This is not a proper question.

■ In addition, although commitment questions are generally phrased to elicit a "yes" or "no" answer, an open-ended question can be a commitment question if the question asks the prospective juror to set the hypothetical parameters for his decision-making.[6] An example of an open-ended commitment question is: "What circumstances in your opinion warrant the imposition of the death penalty?"[7] To summarize, then, a question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question.

Of course, many questions in voir dire are not commitment questions and are not covered by this opinion. For example, the question, "[I]f the victim is a nun, could [the prospective juror] be fair and impartial?" does not ask the prospective juror to resolve or refrain from resolving any issue.[8] A juror could be "fair" and still take into account the victim's status as a nun where that status is logically relevant to the issues at trial or fail to do so if the juror perceived that the victim's status as

a nun should not be controlling. If, however, the defendant had asked, "Could you consider probation in a case where the victim is a nun?"[9] then he would indeed have asked a commitment question. In that situation, the juror is asked to say whether he would refrain from resolving an issue in the case (probation) based upon a fact in the case (the victim is a nun). And as that example illustrates, the word "consider" does not prevent a question from being a commitment question. To the contrary, the word "consider" often marks a commitment question in which the prospective juror is asked to refrain from resolving an issue after learning a fact that could be used to resolve that issue.

■ We have not always recognized these distinctions. In *Maddux v. State*, we held that defense counsel could properly ask whether a prospective juror could consider probation in a murder case in which a child had died.[10] We contended that our holding was required by our earlier holding in *Nunfio v. State*, 808 S.W.2d 482 (Tex.Crim.App. 1991).[11] What we failed to appreciate, however, was that the question in *Nunfio* was distinct from the question in *Maddux* for the reasons we have just discussed in this opinion.[12] Be-

---

5. *Penry v. State*, 903 S.W.2d 715, 739–740 (Tex.Crim.App.)̦, *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).

6. *Allridge*, 850 S.W.2d at 480.

7. *Id.* On the other hand, a question which merely seeks the juror's general views on mitigating factors is permissible. For example: "Do you think there might be circumstances that would mitigate against the death penalty?" does not commit this juror to consider specific kinds of evidence in a specific manner. It does, however, raise the topic of mitigating circumstances and permits, but does not require, the juror to express his view on various relevant factors.

8. *See Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App.1991).

9. The word "would" instead of "could" indicates a much stronger level of commitment, but the substitution of "could" for "would" does not necessarily transform a commitment question into a proper question.

10. 862 S.W.2d 590, 591–592 (Tex.Crim.App. 1993).

11. *Maddux*, 862 S.W.2d at 592.

12. As *Nunfio* questions are distinct from the types of questions presented in the case at bar, this opinion should not be construed as addressing in any manner the validity or construction of the *Nunfio* line of precedent.

cause *Maddux* was wrongly decided and produces inconsistency in our precedent, we overrule that decision, along with any other decision that is inconsistent with the principles articulated in this opinion.[13]

### 2. When are commitment questions improper?

#### a. *When the law does not require the commitment (challenge for cause test)*

Whether a question is a commitment question resolves only half the problem we confront today. Not all commitment questions are improper. For example, questions concerning a juror's ability to consider the full range of punishment for a particular offense meet the above definition of commitment questions but are nevertheless proper.[14] The question, "Can you consider probation in a murder case?" commits a prospective juror to keeping the punishment options open (i.e., to refraining from resolving the punishment issues in a certain way) in a murder case. A murder conviction, even in the abstract, necessarily comprises some factual elements: those listed in the statute (e.g. causing the death of an individual). But jurors are required to follow the law enacted by the Legislature. So a prospective juror must be able to consider the full range of punishment provided for an offense or be challengeable for cause.[15]

■ The distinguishing factor is that the law requires jurors to make certain types of commitments. When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard.[16]

■ However, where the law does not require the commitment, a commitment question is invariably improper. For example, a prospective juror is not challengeable for cause simply because he does not consider a particular type of evidence to be mitigating.[17] And whether a juror considers a particular type of evidence to be mitigating is not a proper area of inquiry.[18] In the mitigating evidence context, the linkage between these two concepts— challenges for cause and the propriety of asking questions—was recognized in *Raby*, but can be understood from examining other mitigating evidence cases in which the proposed question was found to be improper.[19] None of the questions in these

---

13. We are justified in overruling a decision when it produces inconsistency in the law. *Awadelkariem v. State*, 974 S.W.2d 721, 725 (Tex.Crim.App.1998); *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

14. *Briddle v. State*, 742 S.W.2d 379, 384 (Tex. Crim.App.1987), *cert. denied*, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Wyle v. State*, 777 S.W.2d 709, 716–717 (Tex.Crim. App.1989).

15. *Johnson v. State*, 982 S.W.2d 403, 405 (Tex.Crim.App.1998).

16. For example, the defense could legitimately ask prospective jurors whether they could follow a law that requires them to disregard illegally obtained evidence, whether they could follow an instruction requiring corroboration of accomplice witness testimony, or whether they could follow a law that precludes them from holding against the defendant his failure to testify. These types of questions test the prospective jurors' ability to follow various legal requirements. *See* Tex. Code of Crim. Proc., Art. 38.23 & 38.14; U.S. Const., Fifth Amend.

17. *Raby v. State*, 970 S.W.2d 1, 3 (Tex.Crim. App.), *cert. denied*, U.S., 525 U.S. 1003, 119 S.Ct. 515, 142 L.Ed.2d 427 (1998).

18. *Id.*

19. *See Moore v. State*, 999 S.W.2d 385, 406–407 (Tex.Crim.App.1999)(youth); *Rhoades v. State*, 934 S.W.2d 113, 122–123 (Tex.Crim.App.1996)(plurality opinion)(drug use); *Garcia v. State*, 919 S.W.2d 370 (Tex.Crim.App.1994)(alcoholism, troubled

cases could have rendered a prospective juror challengeable for cause because jurors are not required to give mitigating effect to any of those factors. Likewise, victim impact evidence is a legitimate factor for a jury to consider in deciding whether to impose a life sentence instead of the death penalty (i.e. in answering the mitigation special issue), and a prospective juror cannot be asked whether such evidence would affect his resolution of that issue.[20] And the State cannot require a prospective juror to commit to the proposition that potential rehabilitation is irrelevant to a determination of future dangerousness; rehabilitation is in fact a proper consideration under that special issue.[21] Of course, a juror is not required to consider rehabilitation as evidence relating to future dangerousness, but he is allowed to do so, and the State cannot attempt to secure a commitment on whether he *will* do so. We conclude that, for a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause.[22]

### b. *When the question adds facts beyond those necessary for a challenge for cause*

■ Even if a question meets this challenge for cause requirement, however, the question may nevertheless be improper if it includes facts *in addition* to those necessary to establish a challenge for cause. For example, in *Atkins,* the prosecutor asked prospective jurors if they could convict a person who was arrested while possessing, in his pocket, a crack pipe containing a residual amount of cocaine.[23] The State could have permissibly questioned the prospective jurors about their ability to follow a law that holds a person guilty of possession even though the possession involves only a residue amount of the drug in question.[24] But the State's question supplied facts beyond what was necessary to sustain a challenge for cause (arrest, possession of a crack pipe, item found in the defendant's pocket).[25] These additional facts rendered improper what otherwise would have been a proper question designed to assess whether a prospective juror was challengeable for cause. To be proper, then, a commitment question must contain *only* those facts necessary to test whether a prospective juror is challengeable for cause.

■ So, the inquiry for improper commitment questions has two steps: (1) Is the question a commitment question, and (2) Does the question include facts—and only those facts—that lead to a valid challenge for cause? If the answer to (1) is "yes" and the answer to (2) is "no," then

family background, intoxication, good jail record).

**20.** *Compare Mosley v. State,* 983 S.W.2d 249, 261–263 (Tex.Crim.App.1998), *cert. denied,* U.S., 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999)(victim impact evidence relevant to mitigation issue) and *Penry,* 903 S.W.2d at 739–740 (improper to ask prospective juror whether victim impact evidence would prevent or impair him from assessing a life sentence).

**21.** *Jackson v. State,* 822 S.W.2d 18, 26 (Tex.Crim.App.1990), *cert. denied,* 509 U.S. 921, 113 S.Ct. 3034, 125 L.Ed.2d 722 (1993).

**22.** We emphasize that the challenge for cause test and the other rules discussed in this opinion apply *only* to commitment questions. Questions such as "Have you known anyone who has been abused as a child?" and "Are you related to anyone in law enforcement?" are not prohibited by this opinion.

**23.** 951 S.W.2d at 789.

**24.** *Id.* at 790.

**25.** *See id.* at 789–90.

the question is an improper commitment question, and the trial court should not allow the question.

### 3. Application

■■■ We now consider the propriety of the voir dire question posed in the present case: "Would you presume someone guilty if he or she refused a breath test on their refusal alone?" This question is a commitment question. The question asks whether the prospective juror would resolve the issue of guilt against the defendant if the juror learns a particular fact—that the defendant has refused a breath test. The word "presume" does nothing to change the character of the question. That word simply adds another fact to the equation, that the prospective juror would find guilt if there are no exculpatory facts to counterbalance the breath test refusal.

The next step is to determine whether the question includes facts (and only those facts) that lead to a valid a challenge for cause. The facts in this question would not lead to a valid challenge for cause because a juror may permissibly presume guilt from such evidence. The law recognizes that a defendant's refusal to take a breath test is admissible in evidence.[26] Absent statutory direction,[27] a challenge for cause based upon the sufficiency implications of an item of evidence would be inappropriate.

■■■ Because appellant's proposed commitment question would not lead to a valid challenge for cause, the question was improper. The trial court properly prohibited defense counsel from asking the question.[28]

---

26. TEX. TRANSP. CODE § 724.061.

27. The accomplice witness rule is an example of contrary statutory direction about the sufficiency implications of a particular type of evidence. *See* TEX. CODE CRIM. PROC., Art. 38.14.

28. Judge Johnson makes a number of unsound arguments in her dissent. She first contends that "a question in a child-molestation case which inquires whether the juror believes that no child could/would lie about such a thing" is a legitimate question. She is correct because the question gives only those facts sufficient to establish a valid challenge for cause, and thus falls within the exception to the usual prohibition against commitment questions. *See Hernandez v. State*, 508 S.W.2d 853, 854 (Tex.Crim.App.1974)(proper to ask whether a juror could not believe that a police officer would ever lie on the stand); *Hernandez v. State*, 563 S.W.2d 947, 950 (Tex.Crim.App.1978)(juror who says she does not believe a police officer would ever lie on the stand is challengeable for cause).

Second, Judge Johnson contends that the voir dire question here is not a commitment question because it is no different from questions that ask "Could you find someone guilty on the testimony of one witness?" and "Could you find someone guilty on circumstantial evidence alone?" She is correct that the latter two questions share the same essential characteristics as the question at issue for the purpose of determining whether a question is a commitment question. She is incorrect, however, in assuming that these two questions are proper. They are not proper questions. A party is not entitled to commit a juror on whether he can convict based on one witness nor is he entitled to commit a juror to a certain disposition if only circumstantial evidence is presented. *See Castillo v. State*, 913 S.W.2d 529 (Tex.Crim.App.1995); *Garrett v. State*, 851 S.W.2d 853, 859–60 (Tex.Crim. App.1993) (venireman not subject to challenge for cause merely because he would require more evidence than the legal minimum).

Judge Johnson next contends that the question "What circumstances in your opinion warrant the imposition of the death penalty?" is a proper question. She claims that the question "is an appropriate exploration of the juror's attitudes about the death penalty" and that "nothing in that question . . . requires the juror 'to resolve or refrain from resolving any issue.'" But, as noted above, we expressly held in *Allridge* that this was not a proper question because it induced jurors "to set the hypothetical parameters for their decision-making." 850 S.W.2d at 480.

The judgment of the Court of Appeals is reversed and the case is remanded to that court to address appellant's remaining points of error.

Judge Johnson next contends that the question "Could you consider probation in a case where the victim is a nun?" is a proper question. She argues that the question is supported by *Maddux*, that it is no different from the question we approved in *Nunfio*, and that a juror must be able to consider the full range of punishment. She is correct that the question is approved in *Maddux*, but *Maddux* was wrongly decided and conflicts with other cases, including *Raby*. She misses the critical distinction between the question in *Maddux* and the one in *Nunfio*. In *Nunfio*, the juror was asked whether the victim's status as a nun would affect his ability to be fair. On the other hand, asking a juror if he could *consider probation* if the victim was a nun is a request to the juror to refrain from foreclosing probation based upon the victim's status. And while it is true that a juror must be able to consider the full range of punishment for an *offense*, it is *not* true that a juror must be able to consider the full range of punishment for an *offense committed under a certain set of facts*, such as one committed against a certain type of victim (unless the type of victim defines the offense). *See Sadler v. State*, 977 S.W.2d 140, 142 (Tex.Crim.App.1998) ("The law requires jurors to use the facts to tailor the punishment to the crime as committed by the guilty defendant. As such, it would be nonsensical to rule that a juror who will use the facts to fit the punishment to the crime is unqualified and thus challengeable for cause—such a juror would be doing exactly what the law requires."). A juror is perfectly within his rights to say that he will not consider probation for someone who victimizes a nun. The juror must still be fair, but fairness does not preclude a conclusion that those who rape nuns do not deserve probation. Moreover, Judge Johnson's emphasis on the word "consider" is misplaced. In *Raby*, we held that it was improper to ask jurors if they could "consider" particular types of mitigating evidence during the capital sentencing phase. 970 S.W.2d at 3.

Next, Judge Johnson contends that a challenge for cause test for commitment questions "ignores the reality" that voir dire is also intended to acquire information for intelligently exercising peremptory challenges. But, as noted several times in this opinion, the challenge for cause test does not apply to *all* questions; it applies only to commitment questions. Our opinion does not address or restrict the asking of non-commitment questions, regardless of whether they give rise to challenges for cause. The reason for the limitation on commitment questions is that commitment questions are improper *unless the law requires the juror to make the commitment.*

Finally, Judge Johnson asks whether we would "take the same position" if the question at issue were, "Would you presume someone guilty if he or she refused to make a statement to the police?" Of course such a question would be proper. *That is the whole point of the challenge for cause test.* The Fifth Amendment's self-incrimination clause requires jurors to make a commitment not to presume guilt from silence. Because the law requires a commitment not to hold silence against the accused, the question is legitimate as a challenge for cause exception to the prohibition against commitment questions.

Similarly, Judge Price misses the point in his dissent. He contends that we have created a disparity between civil and criminal cases because the Texas Supreme Court has permitted the parties in civil cases to ask prospective jurors unspecified questions about "tort reform" and "the lawsuit crisis." However, questions regarding a juror's attitude about "tort reform" or "the lawsuit crisis" are *not* commitment questions because they do *not* ask for a commitment to resolve or refrain from resolving an issue in the case a certain way after learning a particular fact. *See Babcock v. Northwest Memorial Hospital*, 767 S.W.2d 705, 706 (Tex.1989). Such questions would not be prohibited by the principles articulated in this opinion, and Judge Price's alleged disparity does not exist.

Along with Judge Johnson, Judge Price also contends that we have deprived the parties of the ability to ask questions that enable them to exercise their peremptory challenges. As we have said several times, this opinion does no such thing. *See*, e.g., *ante* at 180 n. 7, and at 182 n. 22. There are many questions that can be asked for the purpose of exercising peremptory challenges. This opinion prohibits only those questions that call for improper commitments.

KEASLER, J., filed a concurring opinion. WOMACK, J. joined.

I agree with the Court's decision to overrule *Maddux v. State.*[1] But I would take this opportunity to overrule *Nunfio v. State*[2] as well. In my mind, the question asked in *Nunfio,* whether the juror could be fair and impartial if the victim were a nun, is not a proper question. It does nothing more than seek to commit the venireperson, which is inappropriate. Further, thanks to *Nunfio,* we have a system in which a trial judge never knows which fact-specific questions are permissible and which are not. Apparently, some are "commitment" questions, while others are merely uncovering bias. The category in which a question falls depends on the exact words used. Both litigants and trial judges are left in utter confusion, never knowing whether the questions are proper or not. Then this Court uses its power to decide on a case-by-case basis which voir dire questions are permissible.

I think that this Court could make better use of its time and that a bright-line rule is necessary. I would overrule *Nunfio* and *Maddux* and hold that no fact-specific questions of any kind may be asked during voir dire because they do nothing other than commit the venire.

PRICE, J., filed a dissenting opinion.

I don't get it. I cannot fathom a reason—much less a principled reason—for there to be in voir dire practice such a disparity between civil cases and criminal cases.

In *Babcock v. Northwest Memorial Hospital,* 767 S.W.2d 705 (Tex.1989), the Texas Supreme Court addressed whether the trial court had impermissibly restricted a litigant from asking about potential bias or prejudice toward tort reform. In that case the Court explained the purpose of voir dire and the origin of the right to ask questions.

This right is based on the *fundamental right to trial by a fair and impartial jury.* We hold that the trial court abused its discretion by refusing to allow the Babcocks to question the jurors about the alleged "lawsuit crisis." A broad latitude should be allowed to a litigant during voir dire examination. This will enable the litigant to discover any bias or prejudice by the potential jurors so that peremptory challenges may be intelligently exercised. *Lubbock Bus Co. v. Pearson,* 277 S.W.2d 186, 190 (Tex. Civ.App.—San Antonio 1955, writ ref'd n.r.e.). Although we recognize that voir dire examination is largely within the sound discretion of the trial judge, *Loesch,* 538 S.W.2d at 440, a court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges. *Dickson v. Burlington N. R.R.,* 730 S.W.2d 82, 85 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.).

*Id.* at 709 (emphasis added). Voir dire is not only to ferret out potential jurors who are challengeable for cause, but also to make intelligent use of peremptory challenges.

Followed to its logical conclusion, the majority's opinion allows parties to exercise peremptory challenges but *does not require* that trial judges allow the parties to ask questions for the intelligent exercise thereof. The majority reaches this conclusion although we have held that the loss of a peremptory challenge affects a substan-

1. 862 S.W.2d 590 (Tex.Crim.App.1993).

2. 808 S.W.2d 482 (Tex.Crim.App.1991).

tial right. *Johnson v. State*, 43 S.W.3d 1, 5 (Tex.Crim.App.2001).

A civil litigant in a law suit in which only property is at stake has a greater right to question potential jurors—and thus, a greater right to a fair and impartial jury—than a criminal defendant whose liberty or life is at stake. "I must not only register my dissent, but must exclaim, 'Color me not only amazed, but do it in chartreuse.'" *King v. State*, 687 S.W.2d 762, 767 (Tex.Crim.App.1985) (Teague, J., dissenting).

With these comments, I join Judge JOHNSON's dissent.

JOHNSON, J., filed a dissenting opinion, in which MEYERS, PRICE, and HOLCOMB, JJ., joined.

I respectfully dissent. The majority's attempt to clarify what constitutes a commitment question simply muddies the issue more by attempting to create a bright-line standard. Just as defining a leading question as one which can be answered by "Yes" or "No" excludes many proper questions, so does defining a "proper" commitment question as one for which "one of the possible answers to that question must give rise to a valid challenge for cause." *Ante*, at 182. At what point does a legitimate inquiry into relevant attitudes slide into an attempt to commit the juror to a given position? Certainly, if the question is filled with facts from the case, it may be clear that the question is an attempt at committing the juror, but a question in a child-molestation case which inquires whether the juror believes that no child could/would lie about such a thing is a legitimate attempt to probe beliefs and biases which might prevent the juror from considering the evidence in an appropriate manner.

The major flaw in the reasoning of the majority is that it begins with the assumption that the question in issue is a commitment question. I see no difference between the question at issue here ("Would you presume someone guilty if he or she refused a breath test on their refusal alone?") and the common voir questions, usually posed by the state, "Could you find someone guilty on the testimony of one witness" and "Could you find someone guilty on circumstantial evidence alone?" If those questions do not ask a juror to commit, then neither does the question at issue.

I further disagree with the majority that "What circumstances in your opinion warrant the imposition of the death penalty?" is in any way an attempt to commit the juror. It is an appropriate exploration of the juror's attitudes about the death penalty. A juror may respond that nothing warrants that sentence (state challenge for cause), or that any murder warrants that sentence (defense challenge for cause), or anything in between. There is nothing in that question that requires the juror "to resolve or refrain from resolving an issue." *Ante*, at 180.

I also disagree that the question "Could you consider probation in a case where the victim is a nun?" is a commitment question. This question is no different than the question asked in *Maddux v. State*, 862 S.W.2d 590, 591–92 (Tex.Crim.App.1993) (whether a prospective juror could consider probation in a murder case in which a child had died), or the question approved by the majority, *ante* at 179 – 180, "If the victim is a nun, could [you] be fair and impartial?" The question in issue would perhaps become a commitment question if it asked, "*Would* you give probation in a case where the victim is a nun?"

A juror must be able to *consider* the full range of punishment, that is, to be able to envisage a circumstance in which proba-

tion might be appropriate for the offense alleged. If the juror cannot envisage *any* circumstance in which probation would be appropriate for the charged offense, that juror cannot consider the full range of punishment and is not qualified to sit on the jury.

I also disagree with the assertion by the majority that, for a "commitment question" to be "proper," it must contain facts needed to mount a challenge for cause. This ignores the reality that challenges for cause are only part of the reason for voir dire; voir dire is also the process by which a defendant acquires the information with which to exercise his peremptory challenges in an intelligent fashion. It also ignores case law which has existed for more than fifty years, and which we reaffirmed earlier this year, recognizing that peremptory challenges exist not simply to remove jurors who should have been removed for cause, but also to eliminate jurors who are thought to unacceptable, though not objectionable, for any of a variety of reasons. *Johnson v. State*, 43 S.W.3d 1, 6 (Tex.Crim.App.2001); *see also Jones v. State*, 982 S.W.2d 386, 393 (Tex. Crim.App.1998), *cert. denied*, 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999); *Martinez v. State*, 763 S.W.2d 413, 415 n. 2 (Tex.Crim.App.1988). By restricting voir dire to questions dealing only with challenges for cause, today's decision conflicts with this case law.

The question at issue is just the sort of question which may help determine whether to use a peremptory challenge: an inquiry into the prospective juror's attitudes and beliefs about the defendant's exercise of a choice. Would the majority take the same position if the question at issue were, "Would you presume someone guilty if he or she refused to make a statement to the police?" I would hope not.

The court of appeals was correct in holding that the question at issue was a proper attempt to discover whether any venireperson would have an automatic predisposition to find a person guilty simply because he refused to take the breath test. I would affirm the judgment of the court of appeals. Because the majority does not do so, I dissent.