

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1400-10

**CHRISTOPHER CONNLEY DAVIS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**KELLER, P.J., filed a dissenting opinion.**

Defense counsel attempted to ask the prospective jurors what "factors" they considered to be important in assessing the sentence "in a case of aggravated robbery with a deadly weapon." Like the question in *Barajas v. State*,[1] regarding the ability of a prospective juror to be "fair and impartial" under particular circumstances, the question in this case is ambiguous and subject to being interpreted as an improper commitment question. Because of this ambiguity, I would hold that the trial court did not abuse its discretion in excluding the question.

We have upheld the refusal by trial courts to allow counsel to ask ambiguously worded

---

[1] 93 S.W.3d 36 (Tex. Crim. App. 2002).

questions that could be interpreted as eliciting an improper commitment. In *Barajas*, defense counsel attempted to ask whether prospective jurors could be "fair and impartial" in a case in which the victim was nine years old.[2] We explained that this question could be interpreted as an inquiry about the effect of the victim's age on three different matters: (1) guilt, (2) witness credibility, or (3) punishment.[3] Inquiry into the third matter would constitute an attempt to obtain an impermissible commitment.[4] In *Sells v. State*, defense counsel attempted to ask, among other things, whether the prospective jurors "would want to know" the defendant's minimum parole eligibility.[5] We explained that the question was ambiguous, because it could be intended to determine whether the prospective juror would "foreclose honest consideration of the special issues" or "give . . . mitigating or aggravating impact to the minimum parole eligibility requirement."[6] If given the latter interpretation, the question would call for an improper commitment.[7]

We explained in *Barajas* that "[t]he trial court may, within its discretion, require that parties phrase questions in a way that is precise enough to glean relevant information from the venire member's answer."[8] And in *Sells*, we said that a trial court may prohibit "attempts . . . through ambiguously worded questions, to commit the veniremembers to giving mitigating or aggravating

---

[2] 93 S.W.3d at 37.

[3] *Id.* at 39-40.

[4] *Id.* at 40.

[5] 121 S.W.3d 748, 755 (Tex. Crim. App. 2003).

[6] *Id.* at 756-57.

[7] *Id.* at 757.

[8] 93 S.W.3d at 39.

effect" to a particular fact.[9] We also held in *Sells* that a party could inquire into a prospective juror's "general philosophical outlook on the justice system (such as whether [] retribution, deterrence, or rehabilitation is the prime goal of the criminal justice system)."[10] But a party cannot ask even an open-ended question that seeks to set the parameters of a juror's decision-making, such as, "What circumstances in your opinion warrant the imposition of the death penalty?"[11] Nor can a party ask questions about whether a particular factor should be considered mitigating.[12]

The question in the present case does not explicitly ask the prospective jurors to say what types of evidence would be given mitigating or aggravating value in their punishment deliberations in the case at hand. But the question is not precise enough to limit the prospective jurors' answers to matters of general punishment philosophy. What are "factors," and what does it mean to say that they are "important?" The Court says that defense counsel's question "sought to discover which factors would be important to jurors' decisions, without inquiring how those factors would influence the decision."[13] This reasoning is similar to our conclusion in *Standefer* about the question in *Nunfio v. State*[14] on whether a prospective juror could be fair and impartial if the victim is a nun. There, we said "[a] juror could be 'fair' and still take into account the victim's status as a nun where that status

---

[9] 121 S.W.3d at 756.

[10] *Id.* at 756 n.22.

[11] *See Standefer v. State* 59 S.W.3d 177, 180 (Tex. Crim. App. 2001) (quoting *Allridge v State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991)).

[12] *Davis v. State*, 313 S.W.3d 317, 346 (Tex. Crim. App. 2010).

[13] Court's op. at 4.

[14] 808 S.W.2d 482 (Tex. Crim. App. 1991).

is logically relevant to the issue at trial or fail to do so if the juror perceived that the victim's status as a nun should not be controlling."[15]  Nevertheless, we later overruled *Nunfio* in *Barajas* on the basis that the question was ambiguous about what answers were to be elicited and constituted a "global fishing expedition" that the trial court was within its discretion to prohibit.[16]

The question defense counsel sought to ask might have motivated the prospective jurors to discuss whether the goal of sentencing is to punish, rehabilitate, or deter criminal behavior, but the question might also have motivated them to discuss what types of evidence they consider to be aggravating or mitigating, such as age or criminal history.  This danger is especially apparent where, as here, defense counsel sought to ask the prospective jurors about factors relevant to sentencing for the specific offense on trial.  Under the circumstances, the trial court was at least within its discretion to prohibit the question as framed.  If appellant really was seeking to elicit responses concerning the prospective jurors' general punishment philosophies, he could have framed a question that was precisely designed to achieve that purpose, and the trial court was within its discretion to require him to do so.

Filed: March 30, 2011
Publish

---

[15]  *Standefer*, 59 S.W.2d at 180.

[16]  *Barajas*, 93 S.W.3d at 39-42.