# NO. 12-13-00374-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHNNY PAUL SUTHERLIN,* <br> *APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Johnny Paul Sutherlin appeals his convictions of four counts of aggravated sexual assault and one count of aggravated kidnapping. In one issue, Appellant argues that the trial court abused its discretion in refusing to allow him to conduct an adequate voir dire of the venire panel concerning the range of punishment. We affirm.

## BACKGROUND

Appellant was charged by indictment with four counts of aggravated sexual assault and one count of aggravated kidnapping. The indictment further alleged that Appellant had two prior felony convictions.

During voir dire proceedings, Appellant read the indictment to the venire panel and, thereafter inquired of the panel members' ability to consider the entire the range of punishment. The following exchange ensued:

[APPELLANT'S COUNSEL]: Now, back to the range of punishment . . . . You have heard me read what we are talking about. We are talking about four counts of rape.

Knowing what the charge is, is there anybody in this panel - - not this case, but can you imagine a case where somebody is charged with this offense and found guilty - - could not consider the minimum of five years?

Let's see. We have got No. 1, 2.

VENIREPERSON:  Could you ask that question again, please.

. . . .

[APPELLANT'S COUNSEL]:  If an individual were convicted of these offenses, could you imagine a situation where you could consider a minimum of a five-year sentence?

VENIREPERSON:  Raise if we can consider?

THE COURT:  If you could not consider the minimum, five years.

[APPELLANT'S COUNSEL]:  5, 8, 9, 10, 11, 12, 13, 15, 16.

THE COURT:  [Counsel], are you asking them after they find someone guilty, or before they hear any facts, will they consider the full range?  Because if you have asked them to already hear the facts - -

[APPELLANT'S COUNSEL]:  If an individual had been found guilty of this offense.

THE COURT:  Of what you read?[1]

[APPELLANT'S COUNSEL]:  Yes.

THE COURT:  Or - - you can't ask them to commit to that.  You cannot ask, if they find him guilty of what you read in the indictment whether they would be able to give five years or not.  You cannot commit them to that.  You can ask the question, but you can't ask them that.

[APPELLANT'S COUNSEL]:  The question was, can they consider it.

THE COURT:  Not to the indictment language; you cannot ask that question.

---

[1] Earlier in the proceedings, Appellant, while reading to the jury from the indictment, stated as follows:

He intentionally or knowingly caused the penetration of the anus of Marilyn Moore (a pseudonym) -- they use pseudonyms in sexual assault so the victim's true identity is not made public in any of the courts -- "by defendant's sexual organ or an object unknown to the grand jury, without the consent of Marilyn Moore (a pseudonym), and the defendant did then and there use[] or exhibit a deadly weapon, to-wit:  a box cutter, that in the manner of its use or intended use is capable of causing death or serious bodily injury during the commission of said assault.

Count II. Intentionally or knowingly cause the penetration of the sexual organ of Marilyn Moore (a pseudonym) by defendant's sexual organ and/or an object unknown to the grand jury, without the consent of Marilyn Moore (a pseudonym), and the defendant did then and there use a deadly weapon, to-wit:  a box cutter, that in the manner of its use or intended use is capable of causing death or serious bodily injury during the commission of said assault.

Count III. Intentionally or knowingly cause the penetration of the anus of Marilyn Moore (a pseudonym) by defendant's hand, without the consent of Marilyn Moore (a pseudonym), and the defendant did then or there use a deadly weapon, to-wit:  a box cutter, that in the manner of its use or intended use is capable of causing death or serious bodily injury during the commission of said assault.

Count IV. Intentionally or knowingly cause the penetration of the sexual organ of Marilyn Moore (a pseudonym) by defendant's hand without the consent of Marilyn Moore (a pseudonym), and defendant did then and there use or exhibit a deadly weapon, to-wit:  a box cutter, that in the manner of its use or intended use is capable of causing death or serious bodily injury during the commission of said assault.

[APPELLANT'S COUNSEL]:  Okay.  Not this specific case, but anybody convicted of a similar offense, those that could not consider five years?  Thank you.

Appellant made challenges for cause against venire members 10, 12, 54, 60, and 61 based on their inability to consider the full range of punishment.  The trial court denied these challenges. Appellant used preemptory strikes against venire members 10, 54, 60, and 61.

Following voir dire, the jury was empaneled, and Appellant pleaded "not guilty" to the charges.  The jury found Appellant "guilty" as charged on each count.  Following a trial on punishment at which Appellant pleaded "true" to the enhancement allegations, the jury sentenced him to imprisonment for life for each offense.  This appeal followed.

## VOIR DIRE COMMITMENT QUESTION

In his sole issue, Appellant argues that the trial court abused its discretion in refusing to allow him to conduct an adequate voir dire of the venire panel concerning the range of punishment.

### Governing Law

We review the trial court's determination concerning the propriety of a voir dire question for abuse of discretion.  *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).  An attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts.  *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact.  *Id.*  Often, such questions ask for a "yes" or "no" answer, in which one or both of the possible answers commits the jury to resolving an issue a certain way.  *Id.*  A commitment question can also be a question that asks a prospective juror to refrain from resolving an issue on the basis of a fact that might be used to resolve the issue.  *Id.*

Not all commitment questions are improper.  *Id.* at 181.  For instance, when the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard.  *Id.*  But where the law does not require the commitment, a commitment question is invariably improper.  See *id.*  Thus, for a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause.  *Id.* at 182.  Moreover, even if a question meets this challenge for cause

3

requirement, the question nevertheless may be improper if it includes facts in addition to those necessary to establish a challenge for cause. *See id.*

In sum, the inquiry for improper commitment questions has two steps. *See id.* First, is the question a commitment question and, second, does the question include facts—and only those facts—that lead to a valid challenge for cause? *See id.* If the answer to the first question is "yes" and the answer to the second question is "no," then the question is an improper commitment question, and the trial court should not allow it. *See id.* at 182–83.

## Voir Dire Questions Concerning the Range of Punishment

Both parties are entitled to jurors who can consider the entire range of punishment for the particular statutory offense, i.e., from the maximum to the minimum and all points in between. *See Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010). Jurors must be able to consider both a situation in which the minimum penalty would be appropriate and a situation in which the maximum penalty would be appropriate. *Id.* Therefore, both sides may question the panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense. *Id.* A question committing a juror to consider the minimum punishment is both proper and permissible. *Id.*

However, counsel veers into impermissible commitment questions when he attempts to commit a venire member to consider the minimum sentence based on specific evidentiary facts. *Id.* For example, a party may ask the potential juror if he could consider the minimum of imprisonment for five years in a murder case. *See id.* But he may not ask if the potential juror could consider that sentence in a case in which the state alleged that the defendant "tortured, garroted, poisoned, and pickled" the victim. *See id.* The nonstatutory manner in which the defendant was alleged to have committed the offense adds evidentiary facts peculiar to the case on trial. *Id.* That question, because it goes beyond the statutory elements and statutory manner or means, is improper under *Standefer*. *Id.*

Here, Appellant relies on *Cardenas* in support of his argument that his query of the venire panel did not amount to an improper commitment question. In *Cardenas*, the defendant asked the members of the venire panel the following question:

> I want to you to assume that you have found somebody guilty of . . . aggravated sexual assault of a child. They intentionally or knowingly caused the penetration of the sexual organ . . . of the victim, by the means of the sexual organ . . . or with a finger or with touching genital to

> genital . . . . Could you honestly ever fairly consider on an aggravated sexual assault of a child as little as five years in prison and give probation as an appropriate punishment?

*Id.* at 181. In response more than fifty members of the panel stated that they could not consider the minimum punishment. *See id.* After voir dire, the appellant challenged each of these jurors for cause, but the trial judge denied most of those challenges. *See id.* The court of appeals reversed the trial court, holding the appellant had not asked an improper question. *See id.* The court of criminal appeals agreed, holding that a commitment question may include any or all of the statutory elements and statutory manners and means contained in the indictment, but may not include evidentiary facts or nonstatutory manners and means. *See id.* at 189.

The facts of the instant case are distinguishable from the facts in ***Cardenas***. Here, Appellant read the language of the indictment to the members of the venire panel and prefaced his question concerning their ability to consider the minimum sentence based on "what [he] read[,]" to them from the indictment. Thus, Appellant prefaced his question on specific facts of the case and nonstatutory manners and means such as the use of a box cutter in the commission of the offense. *See id.* Appellant could properly have asked if the panel members could consider the minimum punishment when a deadly weapon was used. *See id.* But when he asked the question based on the language of the indictment, which specifically referenced the use of a box cutter as a deadly weapon, he rendered the question improper. *See id.*; *see also **Atkins v. State***, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997). Therefore, we hold that the trial court did not abuse its discretion in preventing Appellant from asking an improper commitment question. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered June 24, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

5



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 24, 2015

NO. 12-13-00374-CR

**JOHNNY PAUL SUTHERLIN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court

of Anderson County, Texas (Tr.Ct.No. 31228)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*