

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00175-CR

———————————————————

JAMES MARK DANIEL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR15287

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

A jury convicted Appellant James Mark Daniel of continuous sexual abuse of a child, a first-degree felony, and indecency with a child by contact, a second-degree felony. *See* Tex. Penal Code Ann. §§ 21.02(b) (continuous sexual abuse of a child), 21.11(a)(1), (c)(1) (indecency with a child by contacting the breast); *see also id.* § 21.02(c)(2) (providing that indecency with a child by contacting the breast is excluded from offenses that qualify for the offense of continuous sexual abuse of a child). The jury assessed punishment at life imprisonment for the continuous-sexual-abuse-of-a-child offense, *see id.* § 21.02(h) (punishment range for continuous sexual abuse of a child), and twenty years' confinement for the indecency-with-a-child-by-contact offense, *see id.* § 12.33 (punishment range for second-degree felony). The trial court sentenced Daniel accordingly.

On appeal, Daniel raises two points. First, he contends that the trial court abused its discretion by denying his motion for continuance. Second, he argues that the trial court abused its discretion by denying his request to strike for cause fifty-eight of the sixty veniremembers because they could not consider the full range of punishment. We hold that the trial court did not abuse its discretion in either instance, overrule Daniel's two points, and affirm both convictions.

# I.  THE CONTINUANCE

## A.  Background

The motion for continuance about which Daniel complains was his third such motion. The trial court granted Daniel's first motion for continuance on March 7, 2022, and set the case for trial on June 20, 2022. The trial court then granted Daniel's second motion for continuance on May 27, 2022, and reset the case for trial on July 11, 2022. And on June 23, 2022, Daniel filed his third motion for continuance.[1] He presented the following reasons:

- Defense counsel had recently subpoenaed records from four entities, and only one of the four indicated that it would provide the records in a timely manner.[2]

- Defense counsel would have to try the case by himself; defense counsel noted that he was originally scheduled to sit second chair and, later, to try the case with co-counsel, but scheduling conflicts required that he now try the case alone.

- Daniel's expert witness was not available for the current trial setting, so defense counsel retained a different expert, but that expert (1) needed to review the subpoenaed records that had not yet been produced and (2) defense counsel would not have adequate time to prepare the expert for trial.

---

[1]The caption on Daniel's motion incorrectly identifies it as his second motion for continuance.

[2]At the July 7, 2022 pretrial hearing, Daniel asserted that three of the four entities had responded with the one exception being Child Protective Services. On July 11, the first day of trial, Daniel represented that he had received 750 pages from Child Protective Services the previous Friday (July 8) and that, based on the information contained therein, he wanted to subpoena some additional counseling records.

- The press of other cases had not permitted defense counsel to prepare for Daniel's case as well as he would have liked.

The State opposed any continuance. It noted the age of the case. Daniel had originally been indicted in March 2019 and had later been reindicted in November 2021. The State asserted that the complainant had experienced difficulties coping with what had happened and that the delays frustrated the complainant's family. Finally, the State argued that Daniel's current counsel had been on the case about seven months.

The trial court denied Daniel's third motion for continuance, stating,

All right. Thank you. So I know that this is called second motion for continuance, but it's -- as far as I can tell, it's actually at least the third. I show that there was an unopposed motion for continuance filed on March the 3rd that the State did not oppose, and then this Court signed and granted that and within the order stated that this case is special set as number one for the week beginning June the 20th of 2022. And then in May, knowing the type of case that this was and that it was special set, [defense counsel] asked to meet with me and the District Attorney in chambers, which I was happy to do, at which time it was told to me that [defense counsel] needed some knee surgery. Even though the District Attorney really, I believe, wanted this case to go forward, we all worked to come up with another date to accommodate a knee surgery. I was never told that there would be a need to subpoena records. That was never brought to my attention on that date or time, and we all came up with a date that was -- everybody agreed that it would be set first, that this is the case that was very old with a -- an alleged victim, and so we picked a date.

And then June the 29th, I agreed to meet in chambers and sign off on all of these orders to try to get you your records as fast as I could to accommodate you. But now we have a third motion for continuance and I'm going to deny it. I think that this case needs to go to trial. I've

4

already granted two continuances and so this case is set for trial on Monday. All right?

## B. The Law and Standard of Review

On the State's or the defendant's written motion showing sufficient cause—cause that must be fully set out in the motion—the trial court may continue a criminal action. Tex. Code Crim. Proc. Ann. art. 29.03. Whether to grant or deny a motion for continuance lies within the trial court's sound discretion. *Young v. State*, 591 S.W.3d 579, 592 (Tex. App.—Austin 2019, pet. ref'd). We thus review a trial court's ruling on a motion for continuance for an abuse of discretion. *Id.* A trial court abuses its discretion only if its ruling is so clearly wrong as to lie outside the zone of reasonable disagreement or is arbitrary or unreasonable. *Id.* To show an abuse of discretion, a defendant must show that the trial court's ruling actually prejudiced him. *Id.*

## C. Discussion

The trial court had already granted Daniel two continuances and had thus already accorded Daniel some leeway.

Regarding the unproduced records,[3] the trial court could have reasonably concluded (and based on its comments, appears to have concluded) that defense counsel had not used due diligence to obtain them. Furthermore, the significance of those records was not clear. Daniel concedes as much in his appellate brief: "There *may* have been additional exculpatory evidence in those records that the Jury was not

---

[3]When trial started, all four entities had responded, and Daniel wanted to subpoena additional records.

5

able to hear because the Trial Court denied those continuances." [Emphasis added.] Speculation is insufficient to show an abuse of discretion. *See Kinnett v. State*, 623 S.W.3d 876, 906 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

Next, defense counsel indicated a preference for proceeding with co-counsel. But nothing suggested that defense counsel was incapable of proceeding alone. Further, the record shows that defense counsel proceeded with the assistance of a law clerk during voir dire.

Finally, when Daniel lost his expert witness due to scheduling conflicts, defense counsel acted with diligence by obtaining a different expert witness. Defense counsel wanted more time to work with his new expert witness. Defense counsel also wanted more time to prepare himself for trial. Although a trial court can abuse its discretion by denying a motion for continuance when doing so results in representation by unprepared counsel, the bare assertion that counsel did not have time to prepare does not by itself establish prejudice. *See Mitchell v. State*, No. 02-19-00267-CR, 2021 WL 4205008, at *3 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op., not designated for publication) (citing both *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007), and *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995)). Without more information, defense counsel's arguments here amount to bare assertions.

We hold that the trial court did not abuse its discretion by denying Daniel's third motion for continuance.

6

## D. Ruling

We overrule Daniel's first point.

## II. JURY SELECTION

## A. Background

### 1. The Indictment Contained Five Counts: (Count 1) Continuous Sexual Abuse of a Child, (Counts 2 Through 4) Three Lesser-Included Offenses of the Continuous-Sexual-Abuse-of-a-Child Offense, and (Count 5) Indecency with a Child by Contacting the Breast.

The indictment was structured to allow the State to proceed on the continuous-sexual-abuse-of-a-child offense (Count 1) and, assuming the jury found Daniel not guilty of Count 1, its three component lesser-included offenses:

- Count 2 (aggravated sexual assault by penetrating the complainant's sexual organ with the defendant's finger), Tex. Penal Code Ann. § 22.021(a)(1)(A)(i), (a)(2)(B);

- Count 3 (indecency with a child by contacting the complainant's genitals with his hand), *id.* § 21.11(a)(1), (c)(1); and

- Count 4 (indecency with a child by having the complainant contact the defendant's genitals with her hand), *id.* § 21.11(a)(1), (c)(2).

Normally, lesser-included offenses do not need to be pleaded in the indictment. *See Shakesnider v. State*, 477 S.W.3d 920, 923 (Tex. App.—Houston [14th Dist.] 2015, no pet.). But in the context of continuous sexual abuse of a child, if the jury finds the defendant not guilty of that offense, and if the State wishes to convict the defendant on more than one of the component lesser-included offenses, the State must plead all but one of the listed component offenses (the lesser-included offenses) as separate

7

counts (with the one lesser-included offense not designated as a separate count being the lesser-included offense of the continuous-sexual-abuse-of-a-child count). *See Mohler v. State*, No. 02-19-00398-CR, 2020 WL 6065910, at *2, *4 (Tex. App.—Fort Worth Oct. 15, 2020, pet. ref'd) (mem. op., not designated for publication) (stating that the number of counts within an indictment determines the maximum number of possible convictions). Here, the State listed all the component lesser-included offenses of Count 1 as separate counts, thus assuring the State that if the jury found Daniel not guilty of continuous sexual abuse of a child, the State could potentially obtain multiple convictions on each of the component lesser-included offenses. *See id.* Count 5 (indecency with a child by touching the complainant's breast with his hand) did not qualify as a component offense of the continuous-sexual-abuse-of-a-child offense. Tex. Penal Code Ann. § 21.02(c)(2). Thus, the State necessarily had to plead it as a separate count.

### 2. During Voir Dire, Defense Counsel Asked About Indecency with a Child by Contact While Limiting the Manner and Means to Touching the Child's Vagina.

The State began voir dire and questioned the venire panel about the punishment range. Three veniremembers indicated that they could not consider the full range. The record shows that the trial court struck all three for cause. The parties have no dispute about those three.

The dispute arises when defense counsel conducted voir dire and also asked the veniremembers about the range of punishment:

8

[Defense counsel]: So my question -- and I'm going to go, again, throughout the panel, yes or no, if -- and I want you to assume this. If you have already found someone guilty of indecency with a child by sexual contact, which means they intentionally, with the intent to arouse or gratify their sexual desire, touched a little girl's vagina, could you honestly ever fairly consider as little as two years in prison as an appropriate punishment? Under those circumstances, could you honestly ever fairly consider as little as two years in prison as an appropriate punishment?

Only two members of the entire venire panel (Mr. F. and Mr. H.) said that they could consider the full range of punishment under those circumstances, that is, two years' confinement for committing the offense of indecency with a child by contacting the vagina.

### 3. During Voir Dire, the Prosecutor Asked About Indecency with a Child by Contact Without Limiting the Manner and Means to Touching the Child's Vagina.

The prosecutor immediately followed up by pointing out that, to be qualified, the veniremembers had to be able to consider the full range of punishment for the offense divorced from any specific set of facts and not, as defense counsel had posed the question, based on a given fact pattern:

[Prosecutor]: So we're not talking about this case. Okay? We're talking in general. Can you conceive of any hypothetical set of circumstances in which the minimum might be appropriate or the maximum might be appropriate or somewhere in between? Okay?

. . . .

[Prosecutor]: We're not talking about this case. Okay? We're not talking about the facts of this case. We're talking about in general under the law, are there conceivable sets of circumstances where the minimum might be appropriate? . . .

9

. . . .

[Prosecutor]: So we're not talking about this case. We're talking about under any circumstances, is there a situation where you could consider the minimum, consider the maximum, or somewhere in between? And if you can, then you can serve on this case, on this jury. If there's no set of circumstances, even on those narrow sets of facts, that you could consider either the minimum or the maximum, then you can't serve. Okay?

That's what we're talking about, not this case but in general.

. . . .

MR. [P.]: I'm sure – I'm sure you're concerned about the fact that we all felt like we could never consider the minimum of two years. I feel like if somebody is convicted --

[Prosecutor]: Uh-huh.

MR. [P.]: -- then two years is not enough time for a person. It may depend on the circumstance, but still I would think two years is too small -- too short a time for anyone that's convicted of sex with a child.

[Prosecutor]: Okay. Well --

MR. [P.]: So that's --

[Prosecutor]: Thank you [for] honesty, sir. . . .

. . . .

[Prosecutor]: But we're not talking about this case. And I think it needs to be clear that it's not this case that we're talking about. It's in general. Okay?

So with that, I'll just ask it en masse here, you know, for everybody at once: Does everybody feel like they could consider the full range of punishment, give fair consideration to the full range of punishment for the types of charges involved in this trial? Again, not

10

considering of the facts of this trial because you can't consider the facts at this time, but for the types of charges, everybody feel they can give fair consideration to the full range of punishment.

VENIREPERSON: Yes.

[Prosecutor]: All right. Anybody other than Mr. [P.] feel like they can't give fair consideration to the full range?

All right. Mr. [M.], thank you.

Consequently, after the prosecutor had posed the punishment-range question, only two veniremembers (Mr. P. and Mr. M.) appeared to indicate that they could not consider the full range of punishment. The venire panel had flipped from fifty-eight to two against considering the entire punishment range (after defense counsel's voir dire) to fifty-eight to two being capable of considering the entire punishment range (after the prosecutor's voir dire).

4. **Mr. P.'s Ability to Consider the Full Range of Punishment was Not Clear.**

And the number of veniremembers indicating that they could not consider the full range of punishment after the prosecutor's voir dire might have been only one, not two. Regarding Mr. P., earlier during voir dire, Mr. P. had told the prosecutor that he could consider the full range of punishment. In the above quoted exchange, Mr. P. said that if someone was convicted of having sex with a child, two years' imprisonment was "too small." Mr. P.'s inability to consider the lower range of punishment was, thus, contingent on the defendant's having had sex with a child. But what Mr. P. meant by having sex with a child is not clear. Mr. P. might have meant

11

that if the jury convicted Daniel of continuous sexual abuse of a child, Mr. P. would not consider the lower range of punishment for the offense of indecency with a child by contacting the breast. Mr. P. went on to say that it "may depend on the circumstance." Thus, Mr. P.'s position was not a clear-cut refusal to consider the full range of punishment under any circumstances.

### 5. The Trial Court Followed Up the Prosecutor's Voir Dire with Its Own Voir Dire.

After the prosecutor concluded voir dire, the trial court intervened:

THE COURT: Does everybody understand the question?

> VENIREPERSON: Yes, sir.

> VENIREPERSON: Yes.

> THE COURT: We want to make sure that we have qualified jurors to serve on this jury. Okay? If there's anybody that thinks they can't consider the full range of punishment, just let us know. He's asked you, [defense counsel] has asked you different ways. I want to go row by row just so that we're clear here, and on that front row, if you do not think you can consider the full range of punishment, raise your hand, besides Mr. [M.][4]

> All right. No hands are raised.

> Second row? It's okay if you need to raise your hand.

> I don't see any hands raised.

> Third row?

> Okay. What's your name, sir?

---

[4]Mr. M. was veniremember number 8. He apparently sat on the first row.

MR. [T.]: Mr. [T.], Steven [T.]

THE COURT: Steven?

MR. [T.]: [T.]

THE COURT: Okay. Thank you.

Anybody else on the third row?

(No audible response.)

THE COURT: Fourth row?

(No audible response.)

THE COURT: Fifth row?

(No audible response.)

THE COURT: Sixth row?

(No audible response.)

THE COURT: Thank you.

[Prosecutor]: Mr. [J.], was that a hand, sir?

MR. [J.]: No.

THE COURT: Okay. All right. Thank you, Counselors.[5]

After the trial court went row by row, two veniremembers—Mr. M. and Mr. T.—indicated that they could not consider the full range of punishment. Mr. P. did not respond.

---

[5]Mr. P. was veniremember 37. Which row he sat on is not clear. Regardless, he did not speak up.

### 6. Daniel Challenged for Cause All but Two Veniremembers and Requested Additional Peremptory Strikes.

Defense counsel then challenged for cause the entire venire panel except for Mr. F. and Mr. H.—the two veniremembers who indicated that they could consider the entire range of punishment even under defense counsel's proposed factual scenario. Defense counsel said, "I'm going to have to challenge for cause [fifty-eight] of the [sixty] jurors." The trial court overruled defense counsel's challenges for cause.

Defense counsel then requested additional peremptory strikes in addition to his allotted ten peremptory strikes. The trial court denied defense counsel's request.

### 7. Messrs. M., T., and P. Did Not Serve on the Jury.

#### a. Mr. M.

The trial court struck for cause Mr. M., who, after the prosecutor clarified the standard, indicated he could not consider the full range of punishment.

#### b. Mr. T.

Defense counsel used a peremptory challenge on Mr. T., who spoke up when the trial court questioned the venire panel about the members' ability to consider the full range of punishment.

#### c. Mr. P.

Mr. P., whom the prosecutor appeared to identify as a veniremember who could not consider the full range of punishment, was not stricken for cause. Nor did the State or defense counsel use a peremptory challenge on him. Mr. P. was

14

veniremember number 37, and defense counsel used his last peremptory challenge on veniremember 44, so in theory, defense counsel could have used his last peremptory strike on Mr. P. but did not.

Despite Mr. P.'s not being stricken for cause or removed by a peremptory challenge, Mr. P. did not sit as a juror. As noted earlier, Mr. P. was veniremember number 37. The last two veniremembers seated as jurors were veniremembers 39 and 40. Consequently, although (1) Mr. P. was not stricken for cause, (2) neither the State nor defense counsel used a peremptory challenge on Mr. P., and (3) Mr. P. was within the range of selected jurors, Mr. P. was nevertheless inexplicably passed as a seated juror. Regardless of the explanation, neither the State nor defense counsel objected.

## B. Harm

To establish harm for an erroneous denial of a challenge for cause, the complaining party must show on the record: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of veniremember; (3) his peremptory challenges were exhausted; (4) his request for additional peremptory challenges was denied; and (5) an objectionable veniremember sat on the jury. *Daniel v. State*, 485 S.W.3d 24, 33 (Tex. Crim. App. 2016).

15

## C. Discussion

Without deciding, assuming that Daniel asked a proper commitment question that subjected venire members to a challenge for cause[6]—based on the record after the prosecutor and the trial court had rehabilitated the venire panel—the only veniremembers potentially challengeable for cause based on an inability to consider the full range of punishment were Mr. M. and Mr. T. and, possibly, Mr. P. *See Cardenas v. State*, 325 S.W.3d 179, 185 (Tex. Crim. App. 2010). Daniel, however, did not limit his challenges for cause to those three. Instead, he challenged fifty-eight of the sixty veniremembers. We conclude that Daniel had no clear and specific challenge for cause as to Messrs. M., T., and P. *See Daniel*, 485 S.W.3d at 33.

If we assume that Daniel's challenges applied to Messrs. M., T., and P., we still conclude that he has not shown harm.

The trial court struck Mr. M. for cause. Daniel thus has no complaint as to him. *See id.*

Next, Daniel did not use a peremptory challenge on Mr. P. Not using a peremptory challenge on a disputed veniremember defeats any claim of harm. *See id.*

---

[6]The litmus test for a proper commitment question is whether one of the possible answers to it gives rise to a valid challenge for cause. *Standefer v. State*, 59 S.W.3d 177, 180, 182 (Tex. Crim. App. 2001); *see also Cardenas v. State*, 325 S.W.3d 179, 188–89 (Tex. Crim. App. 2010) (discussing both *Sells v. State*, 121 S.W.3d 748, 757–58 (Tex. Crim. App. 2003), and *Atkins v. State*, 951 S.W.2d 787, 788–90 (Tex. Crim. App. 1997)).

Finally, although Daniel used a peremptory challenge on Mr. T., Daniel did not show and has not shown that an objectionable veniremember sat on the jury. This also defeats any claim of harm. *See id.*

**D.  Ruling**

We overrule Daniel's second point.

### III.  Conclusion

Having overruled Daniel's points, we affirm both convictions.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 25, 2023