ACCEPTED
03-14-00695-CR
5448471
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/28/2015 10:56:13 AM
JEFFREY D. KYLE
CLERK

## No. 03-14-00695-CR

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/28/2015 10:56:13 AM
JEFFREY D. KYLE
Clerk

In The Court of Appeals
For The Third Court of Appeals District
Austin, Texas

**Paul Daniel Campbell,**
*Appellant,*
**v.**
**The State of Texas,**
*Appellee.*

ON APPEAL FROM THE 274th DISTRICT COURT, COMAL
COUNTY, TEXAS TRIAL COURT CAUSE NO. CR2013-512

**BRIEF FOR APPELLANT**
**ORAL ARGUMENT REQUESTED**

Amanda Erwin
State Bar No. 24042936
109 East Hopkins Street, Suite 200
San Marcos, Texas 78666
Telephone: (512) 938-1800
Telecopier: (512) 938-1804
amanda@theerwinlawfirm.com
*Counsel for Paul Daniel Campbell*

## Identity of Parties and Counsel

**Appellant:**

Paul Daniel Campbell

**Appellate Counsel:**

Amanda Erwin
The Erwin Law Firm, L.L.P.
109 East Hopkins Street, Suite 200
San Marcos, Texas 78666
Telephone: (512) 938-1800
Telecopier: (512) 938-1804

**Trial Counsel:**

Paul Finley
Reagan Burrus PLLC
401 Main Plaza, Suite 200
New Braunfels, Texas 78130
Telephone: (830) 625-8026

**Appellee:**

The State of Texas

**Appellate Counsel:**

Joshua Presley
Comal County District Attorney's Office
150 N. Seguin Avenue
Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300

**Trial Counsel:**

Daniel Palmitier and Chari Kelly

Comal County District Attorney's Office
150 N. Seguin Avenue
Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300

**Trial Judge:**

Hon. Gary L. Steel

**Table of Contents**

**Page**

Identity of Parties and Counsel……………….…………………..ii

Table of Contents…………………………………...……………..iv

Index of Authorities……………………………………………..v

Statement of Case……………………………………………...1

Statement of Issues …………………………………………….2

Oral Argument Requested………………………………………2

Statement of Facts……………………………...………………..2

Summary of the Argument……………………..………………..9

Point of Error One.…………………………………………10

Standard of Review……………………………………………10

Acts of Deficient Performance………………...………………..13

Prejudice………………………………………………...20

Prayer……………………………………….…………………..25

Certificate of Service………………………………………….26

Certificate of Word Limit Compliance……………...…………27

# Index of Authorities

**Cases**                                                        **Page**

*Andrews v. State*, 159 S.W.3d 98 (Tex.Crim.App. 2005)……………13

*Bell v. Cone*, 535 U.S. 685 (2000)…………………………………...11

*Burnett v. State*, 88 S.W.3d 633 (Tex.Crim.App. 2002)………...........24

*Collier v. Turpin*, 155 F.3d 1277 (11th Cir. 1998)…………………....12

*Ex parte Martinez*, 195 S.W. 3d 713 (Tex.Crim.App. 2006)………...19

*Jackson v. State*, 766 S.W.2d 504 (Tex.Crim.App. 1985)…………...13

*McMann v. Richardson*, 397 U.S. 759 (1970)………………………10

*Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999)………………......12

*O'Neal v. McAninch*, 513 U.S. 432 (1995)………………………….24

*Profitt v. Waldron*, 831 F.2d 124 (5th Cir. 1987)…………………13

*Ross v. State*, 133 S.W.3d 618 (Tex.Crim.App. 2004)……………...19

*Standefer v. State*, 59 S.W.3d 177 (Tex.Crim.App. 2001)…………..13

*Strickland v. Washington*, 466 U.S. 668 (1984)…………….............10

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004)………........11

Washington v. Hofbauer, 228 F.3d 689 (6th Cir. 2000)……….........12

*Wiggins v. Smith*, 539 U.S. 510 (2003)……………………………11

*Wilkerson v. State*, 726 S.W.2d 542 (Tex. Crim. App. 1986)………..10

**Statutes**

TEX. CODE CRIM. PROC 37.07……………………………………  18

## Statement of the Case

This is an appeal from a criminal proceeding. The Appellant, Paul Daniel Campbell, is currently incarcerated. On October 9, 2013, a Comal County grand jury returned an indictment charging Mr. Campbell with one count of intoxication manslaughter, and one count of manslaughter. (1 CR 5-6). The morning of October 14, 2014, the State abandoned count two of the indictment, manslaughter, and the jury was sworn. (3 RR 9, 14). Mr. Campbell entered a plea of guilty to the offense of intoxication manslaughter, and also pled true to the allegation that a deadly weapon was used during the commission of the offense. (3 RR 19). The trial then became a unitary trial, and the jury subsequently found Mr. Campbell guilty of the offense of intoxication manslaughter, and that it was true that a deadly weapon was used during the commission of the offense, as instructed by the trial court. (4 CR 100). The jury assessed punishment at seventeen (17) years in the Institutional Division of the Texas Department of Criminal Justice, and further assessed a five thousand (5,000.00) dollar fine. (1 CR 84-87). Mr. Campbell was sentenced in opened court on October 15, 2014. (1 CR 102). The trial court certified Mr. Campbell's right to appeal. (1 CR 83). The Appellant's notice of appeal was timely filed. (1 CR 124-125).

## Statement of the Issues

Point of Error One:

The Appellant was denied the effective assistance of counsel as a result of the Appellant's trial counsel's multiple acts of deficient performance.

## Oral Argument Requested

The Appellant respectfully request that oral argument be granted in this case.

## Statement of Facts

On October 9, 2013, a Comal County grand jury returned an indictment charging Mr. Campbell with one count of intoxication manslaughter, and one count of manslaughter. (1 CR 5-6). The morning of October 14, 2014, the State abandoned the count of manslaughter, and the jury was sworn. (3 RR 9, 14). Mr. Campbell entered a plea of guilty to the offense of intoxication manslaughter, and also pled true to the allegation that a deadly weapon was used during the commission of the offense. (3 RR 19). The trial then became a unitary trial, and the hearing on sentencing commenced. (3 RR 19).

The State called Justin Nauert, a firefighter with Comal County. (3 RR 25). On April 1, 2013, the date of the offense, Mr. Nauert was at the Barnside Lodge conducting an exterior survey for preplanning. (3 RR 25).

Mr. Nauert testified that he witnessed a charcoal gray Ford Ranger driving by at a very high rate of speed, and passing another vehicle. (3 RR 26). Approximately three to five minutes later, Mr. Nauert and his crewmembers were called out to a head-on collision with multiple vehicles. (3 RR 27).

Upon arrival, Mr. Nuaert made contact with a woman in an Explorer, who was unresponsive and had extensive bodily injury. (3 RR 28). The woman did not have a pulse, and she was pronounced as dead on scene. (3 RR 28).

Mr. Nuaert then made contact with a man who was in the cab of a Ford Ranger, located in a tree. (3 RR 28). The man was alert, and the cab smelled of alcohol. (3 RR 29). The man was placed in a C-collar and escorted to the ambulance on the scene. (3 RR 29). San Antonio Air Life flew the man to University Hospital in San Antonio for possible internal injuries. (3 RR 30).

There was also a full-sized black Toyota Tundra involved in the accident. (3 RR 30). The occupants were a middle-aged male, a middle-aged pregnant female, and a small child; the occupants refused treatment or transport to the hospital. (3 RR 30).

The State then called Charles Hutson, a fence builder from Fischer, Texas. (3 RR 33-34). Mr. Hutson testified that the day of the accident, he

3

was on his way to pick up his two children from the junior high school in Sattler, Texas. (3 RR 34). While driving, Mr. Hutson was passed by a gray Ford Ranger. (3 RR 36). Mr. Hutson witnessed the Ford Ranger turn sideways and lose control. (3 RR 37). The Ford Ranger then went into the other lane of oncoming traffic, and made contact with an Explorer. (3 RR 37). Mr. Hutson further testified that there was a school bus approximately three vehicles behind the Explore that was struck by the Ford Ranger. (3 RR 39).

The State then called Jason Nolen, a highway patrol trooper with the Texas Department of Public Safety. (3 RR 40-41). On April 1, 2013, Trooper Nolen was dispatched to a fatality on FM 306. (3 RR 41-42). Trooper Nolen interviewed witnesses on the scene and walked the scene to look for evidence. (3 RR 43). Trooper Nolen testified that the victim, Mrs. Payne, was wearing her safety belt at the time of the accident. (3 RR 43-44). Officer Nolen testified that his agency was unable to compute a speed for Mr. Campbell's vehicle, The Ford Ranger. (3 RR 44-45). The State admitted into evidence State's Exhibits 1-66, photographs of the scene. (3 RR 45). Trooper Nolen testified that the area that Mr. Campbell passed Mr. Hutson's vehicle, was a no passing zone. (3 RR 50). Trooper Nolen further testified that outside of Mr. Campbell's vehicle, officers found a koozie, a

4

wine bottle, and a glass marijuana pipe.  (3 RR 56-57).

Trooper Nolen testified that he went to University Hospital in San Antonio, and Mr. Campbell admitted to Trooper Nolen that he was driving the Ford Ranger the day of the accident.  (3 RR 59).  Trooper Nolen obtained a sample of Mr. Campbell's blood at the hospital, the results of which was .132 per grams of alcohol per milliliters of blood, and negative for seven drugs; however, Mr. Campbell's blood was not tested for the presence of marijuana or THC.  (3 RR 59-61).

On April 1, 2013, Trooper Nolen went and notified the family of Ms. Payne's death.  (3 RR 64).

The State then called Suzanna Dana, a forensic pathologist, who performed the autopsy on the deceased.  (3 RR 68).  Dr. Dana testified that Ms. Payne had a number of blunt force injuries to her body, and Dr. Dana concluded that Ms. Payne's cause of death was as a result of multiple traumatic injuries.  (3 RR 71, 73).

The State then called Leonardo Ramos, a probation officer from Bexar County, Texas.  (3 RR 76).  Mr. Ramos had Mr. Campbell on his caseload. (3 RR 77).  Mr. Campbell was on probation for possession of marijuana and resisting arrest.  (3 RR 77).  Mr. Campbell was revoked from his probation for getting arrested for possession of marijuana, and was sentenced to jail

5

time.  (3 RR 78).

The State then called Amy Payne, a daughter of the deceased.  (3 RR 82).  Ms. Payne testified regarding her relationship with her mother, and the impact of her mother's death on her and their family.  (3 RR 81-88).

The State then called Mary Ann Raglan, the deceased's mother.  (3 RR 91).  Ms. Raglan testified regarding the relationship she had with her daughter, and the impact of her daughter's  death on her and their family.  (3 91-98).

The State then called Lonnie Payne, the deceased's husband.  (3 RR 98).  Mr. Payne testified regarding the relationship he had with his wife, and the impact of her death on him and their family.   (3 RR 98-103).

The State then rested its case.  (3 RR 104).

The Defense called Jacob Payton, a minister and horseshoer from Seguin, Texas.  (3 RR 106).  Mr. Payton knew Mr. Campbell since 2010, where the two met while Mr. Campbell was a bull rider.  (3 RR 107).   In 2012, Mr. Campbell started attending Mr. Payton's church.  (3 RR 109). Mr. Payton testified that Mr. Campbell has a good heart and likes to help people, and further that the accident has had a huge impact on Mr. Campbell's and his overall outlook on life.  (3 RR 111).

The Defense then called Jose Reyes, a probation officer with the Comal

County Adult Probation Department. (3 RR 115). Mr. Reyes detailed to the jury the requirements of probation, and the consequences if someone is revoked from their probation. (3 RR 116-120).

The Defense then called Janet Pope, Paul Campbell's mother. (3 RR 130). Ms. Pope testified regarding Mr. Campbell's' childhood and education. (3 RR 130-132). Ms. Pope testified regarding Mr. Campbell's attitude and demeanor after the accident. (3 RR 132-134, 135). Ms. Pope testified regarding Mr. Campbell's rodeo injuries. (3 RR 134).

The Defense then called Robert Sontag, an architectural hardware consultant, certified door consultant, and licensed fire door assembly inspector from Canyon Lake, Texas. (4 RR 6-7). At the time of trial, Mr. Campbell had been living with Mr. Sontag and his family off and on for a period of four to five years. (4 RR 8). Mr. Sontag described to the jury the positive transformation he had witnessed in Mr. Campbell since the accident. (4 RR 9-12).

The Defense then called Cody Haynes, a minister of a cowboy church, from Johnson City, Texas. (4 RR 15-16). Mr. Haynes described to the jury the positive transformation he had witnessed in Mr. Campbell since the accident. (4 RR 17-18).

Last, the Defense called Mr. Campbell to testify. (4 RR 20). Mr.

7

Campbell was 26 years old the day of trial. (4 RR 22). Mr. Campbell explained to the jury his love of the rodeo, and that his rodeo career is how he eventually ended up in the area from his home state of Alaska. (4 RR 24-26). Mr. Campbell detailed to the jury his head injuries, starting from kindergarten on to his bull riding days. (4 RR 28-30). Mr. Campbell testified that before the accident he had been living in California, and had just moved back to Texas to take a job to work construction on a woman's home in exchange for room and board. (4 RR 32).

The day of the accident, Mr. Campbell informed the woman he could no longer work for her, and packed up his belongings. (4 RR 33). At around ten in the morning, Mr. Campbell went to a friend's home to drop off his dog. (4 RR 33-34). Mr. Campbell drank two cups of wine at his friend's home, and left at around noon with the intention of to heading to Johnson City to find work. (4 RR 35). Mr. Campbell stopped at a gas station, and that is the last thing Mr. Campbell remembers from the day of the accident until he woke up at the ICU. (4 RR 35).

Mr. Campbell testified that he was incarcerated in the Comal County Jail for approximately three months until he bonded out. (4 RR 38). Mr. Campbell detailed to the jury how the accident had impacted his life and expressed his remorse. (4 RR 39-42). Mr. Campbell explained to the jury

why his probation out of Bexar County was revoked. (4 RR 42-44). Mr. Campbell admitted to the jury that he had consumed alcohol and marijuana since the accident. (4 RR 44, 48).

On cross-examination, Mr. Campbell described to the jury the details of his prior arrest for resisting arrest and possession of marijuana. (4 RR 50). Mr. Campbell denied smoking marijuana the day of the accident. (4 RR 64).

The trial court read the charge in open court, and the State and the Defense made closing arguments. (4 RR 72-95). The jury subsequently found Mr. Campbell guilty of the offense of intoxication manslaughter, and that it was true that a deadly weapon was used during the commission of the offense, as instructed by the trial court. (4 CR 100). The jury assessed punishment at seventeen (17) years in the Institutional Division of the Texas Department of Criminal Justice, and further assessed a five thousand (5,000.00) dollar fine. (1 CR 84-87).

## Summary of the Argument

The Appellant, Mr. Campbell, contends that he was denied the effective assistance of counsel, as a result of his trial counsel's multiple acts of deficient performance. Furthermore, the Appellant asserts that this denial of effective assistance of counsel resulted in prejudice. Mr. Campbell seeks this Honorable Court to reverse the judgment of punishment below.

**Point of Error One**

The Appellant was denied the effective assistance of counsel, as a result of the Appellant's trial counsel's multiple acts of deficient performance.

**The Standard of Review**

A defendant in a criminal case is entitled to effective assistance of counsel. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). Furthermore, counsel must act within the range of competence demanded of counsel in criminal cases. *McMann v. Richardson*, 397 U.S. 759 (1970).

In *Strickland v. Washington*, the United States Supreme Court established the federal constitutional standard for determining whether counsel rendered reasonably effective assistance. *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant first must show that counsel's performance was deficient; that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id*. at 687. Second, the defendant must show that the deficient performance prejudiced the defense; that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. *Id*. at 692. The defendant must identify specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id*. at 690.

The reviewing court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance. *Id*. Ultimately, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Counsel's performance is measured against an "objective standard of reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). The prejudice an applicant must show is by less than a preponderance of the evidence because "[t] he reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 n. 9 (2004).

While the Appellant must overcome the "strong presumption" that counsel's challenged conduct "might be considered sound trial strategy," counsel may not insulate challenged conduct from review by claiming it was "strategic." *Bell v. Cone*, 535 U.S. 685, 698 (2000). Whether counsel's

conduct was strategic is a question of fact, but whether it was objectively reasonable is a question of law, to which no deference is owed. *Collier v. Turpin*, 155 F.3d 1277, 1290 (11th Cir. 1998). As explained in *Strickland*, the issue of ineffective assistance of counsel is not a question of "basic, primary, or historical fact," and "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland*, 466 U.S. at 698. Moreover, strategic choices are entitled to deference only to the extent they are based on informed decisions. *Id*. at 690-691.

This Court is "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999). *See also Hardwick v. Crosby*, 320 F.3d 1127, 1186 (11th Cir. 2003) ("The mere incantation of 'strategy' does not insulate attorney behavior from review."); *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984) ("even deliberate trial tactics may constitute ineffective assistance of counsel if they fall outside the wide range of professionally competent assistance"); *Washington v. Hofbauer*, 228 F.3d 689, 704 (6th Cir. 2000) ("the label 'strategy' is not a blanket justification for conduct which

otherwise amounts to ineffective assistance of counsel"); *Profitt v. Waldron*, 831 F.2d 1245, 1248 (5th Cir. 1987) ("This measure of deference [to a claim of trial strategy] must not be watered down into a disguised form of acquiescence.").

Lastly, it is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance of counsel. *Jackson v. State*, 766 S.W.2d 504, 508 (Tex.Crim.App. 1985).

**Acts of Deficient Performance**

The Appellant's trial counsel failed to object to inadmissible and harmful evidence numerous times throughout the trial below, and the record demonstrates that there was no reasonable trial strategy in failing to object. *Andrews v. State*, 159 S.W.3d 98, 103 (Tex.Crim.App. 2005).

First, Mr. Campbell's trial counsel did not object during voir dire when the attorney for the State repeatedly asked improper commitment questions. *Standefer v. State*, 59 S.W.3d 177 (Tex.Crim.App. 2001). Commitment questions are improper when 1) the question is a "commitment question," meaning the question commits a prospective juror to resolve, or to refrain from resolving, an issue in the case on the basis of one or more facts contained in the question; and 2) the proposed commitment question would

13

not lead to a valid challenge for cause. *Id*. at 183.

The first impermissible commitment question posed by the State was, "The main purpose of sentencing for intoxication manslaughter is: 1) being rehabilitated- everyone makes mistakes and the defendant will change; 2) restitution- help the victim recover; 3) deterrence- we want people to know what they can't do in Comal County; 4) punishment- the defendant harmed someone so he must be punished." (2 RR 75-76). The State then proceeded to ask every single member of the venire panel to choose one of the numbered responses. (2 RR 76- 80). The question posed is a commitment question, because the question commits a prospective juror to resolve, or to refrain from resolving, the issue of punishment on the basis of one or more facts contained in the question; and 2) the proposed commitment question would not lead to a valid challenge for cause. *Id*. at 183.

The second impermissible commitment question posed by the State was, "How do you feel about assessing a lengthy prison sentence for a first-time, alcohol related offender: 1) very uncomfortable- everyone deserves a second chance; 2) uncomfortable- if it was a one-time mistake, we can rehabilitate; 3) comfortable- if the facts of the case support it; and 4) very comfortable- if you do the crime, you do the time." (2 RR 81). The State then proceeded to ask every single member of the venire panel to choose one

14

of the numbered responses. (2 RR 81-85). The question posed is a commitment question, because the question commits a prospective juror to resolve, or to refrain from resolving, the issue of punishment on the basis of one or more facts contained in the question; and 2) the proposed commitment question would not lead to a valid challenge for cause. *Id*. at 183.

The third impermissible commitment question posed by the State was, "The most important factor in determining the appropriate punishment is: 1) the defendant's age and actions since the crime; 2) the defendant's criminal history; 3) the seriousness of the crime; or, 4) the injury the crime has caused." (2 RR 85). The State then proceeded to ask every single member of the venire panel to chose one of the numbered responses. (2 RR 85-90). The question posed is a commitment question, because the question commits a prospective juror to resolve, or to refrain from resolving, the issue of punishment on the basis of one or more facts contained in the question; and 2) the proposed commitment question would not lead to a valid challenge for cause. *Id*. at 183.

The fourth impermissible commitment question posed by the State was, "A defendant who is remorseful should be punished less severely. Starting with 1) strongly agree- the pain of guilt is punishment enough; 2) you agree-

15

remorse should be considered more than the crime committed; 3) you disagree with that statement- remorse is good but it doesn't change what happened; and 4) strongly disagree- everyone is sorry afterward." (2 RR 90-91). The State then proceeded to asked every singe member of the venire panel to chose one of the numbered responses. (2 RR 91- 95). The question posed is a commitment question, because the question commits a prospective juror to resolve, or to refrain from resolving, the issue of punishment on the basis of one or more facts contained in the question; and 2) the proposed commitment question would not lead to a valid challenge for cause. *Id*. at 183.

There can be no possible trial strategy for Appellant's trial counsel's failure to object to the various commitment questions propounded to the venire panel; Appellant's whole case rested solely on the issue of punishment, and these improper commitment questions adversely affected how the jury would assess punishment. *Andrews v. State*, 159 S.W.3d 98, 103 (Tex.Crim.App. 2005). For, it is clear from a reading of the record below that the Appellant's trial strategy was to plea guilty to the offense, and argue that Mr. Campbell should be granted a term of probation. (3 RR 24, 115); (4 RR 8).

When the State asked the first impermissible commitment question,

16

regarding what the venire panel thought the main purpose of sentencing for intoxication manslaughter should be, only one prospective juror answered with choice one, being rehabilitation. (2 RR 79). Choice one was the only option that would support a juror granting Mr. Campbell probation, all the other choices spoke to sentencing prison time. (2 RR 75-76). This prospective juror, Mr. Thompson, was ultimately not chosen to sit on the jury. (2 RR 129). There is no possible trial strategy in failing to object to this line of questioning, as it clearly poisoned the jury against the Appellant's ultimate goal of trial, to convince the jury to grant Mr. Campbell probation. (3 RR 24, 115); (4 RR 8). Appellant's trial counsel's failure to object to this questioning essentially allowed the State to have every person that ultimately served on the jury swear to the State that they would not grant probation to Mr. Campbell. (2 RR 75-76). Appellant contends that the Court should not cloak this failure to object as trial strategy, because trial counsel's inaction clearly defies the ultimate goal of Mr. Campbell going to trial on the issue of punishment. *Id*. at 103.

Similarly, there could be no possible trial strategy in failing to object to the State's question regarding how comfortable members of the venire panel would feel assessing a lengthy prison sentence for a first-time alcohol related offender. *Id*. Eight members of the venire panel answered favorably for Mr.

Campbell, however only two were actually chosen to sit on the jury, Juror Dembickie, and Juror Wilkinson (2 RR 81-85). Therefore, the remaining members of the jury committed to the State during voir dire that they would feel very comfortable assessing a lengthy prison sentence for Mr. Campbell. (2 RR 81-85). This question clearly undermined the Appellant's trial counsel's overall strategy of convincing the jury to grant Mr. Campbell probation, or at the very least a short prison sentence, and therefore should not be construed as trial strategy. *Id.*

Next, Mr. Campbell's trial counsel did not object to the State's impermissible comments in closing arguments regarding the parole eligibility laws in Texas. TEX. CODE CRIM. PROC. 37.07 § 4. The State stated during closing arguments, " So what you heard, when I asked for 20 years, is 20 years doesn't mean 20 years. (4 RR 91). The State further stated during closing arguments, "But what you do know is 20 years doesn't mean 20 years." (4 RR 91). These statements made by the State during closing arguments constitute an improper application of parole law to Mr. Campbell; the comments were not made so the jury could better understand the language in the instruction, but were directed to influence the jury to believe that any prison sentence assessed would not actually be served in full by Mr. Campbell. TEX. CODE CRIM. PROC. 37.07 § 4. The Texas Court

of Criminal Appeals has made clear that a jury may not base its assessment of punishment on speculation as to when, if ever, a defendant may be released on parole after becoming eligible for parole. *Ross v. State*, 133 S.W.3d 618 (Tex.Crim.App. 2004). There is no conceivable trial strategy involved in the Appellant's trial counsel's failure to object to the State's impermissible statements, because it clearly was not in Mr. Campbell's best interest for the jury to believe that any prison sentence assessed would not have to be completed in full. *Andrews v. State*, 159 S.W.3d 98, 103 (Tex.Crim.App. 2005).

Next, the Appellant's trial counsel was deficient in failing to obtain an expert to test Mr. Campbell's blood sample for the presence of marijuana. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). For, one necessary facet of effective assistance of counsel is the investigation of the facts and law as applicable to the case; counsel has the duty in every case to make a reasonable investigation or a reasonable decision that an investigation is necessary. *Id*. at 691. As the Texas Court of Criminal Appeals explained in *Ex parte Martinez*, "When assessing the reasonableness of an attorney's investigation, a reviewing court must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further." *Ex parte Martinez*, 195 S.W. 3d

713, 721 (Tex.Crim.App. 2006). In the case at hand, the Defense was aware of the fact that a marijuana pipe was discovered outside of Mr. Campbell's vehicle, and that the Texas Department of Public Safety did not test Mr. Campbell's blood specimen for the presence of marijuana or THC. (3 RR 59-61); (4 RR 64). The Appellant's trial counsel further had knowledge that Mr. Campbell had two prior arrests for Possession of Marijuana that were admissible at punishment. (3 RR 77-78). Knowing all this information, it was crucial to get Mr. Campbell's blood tested for the presence of marijuana or THC in order to dispute claims by the State that Mr. Campbell was smoking marijuana the day of the accident. (4 RR 64). The Appellant would urge the Court to find that trial counsel was deficient when he made an unreasonable decision to not investigate whether or not Mr. Campbell's blood had the presence of marijuana or THC, because there was considerable evidence known to trial counsel that would lead a reasonable attorney to investigate further in order to present an effective defense. *Id*. at 721.

## Prejudice

The "prejudice" prong of *Strickland* requires this Court to determine whether counsel's objectively deficient conduct highlighted above was sufficient to undermine its confidence in the verdict, that is, whether there is

20

a reasonable probability that, but for this objectively deficient conduct, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Kyles v. Whitley*, 514 U.S. 419, 430 (1995). The prejudice the Appellant must show is by less than a preponderance of the evidence because "[t] he reasonable-probability standard is not the same as, and should not be confused with, a requirement that the Appellant prove by a preponderance of the evidence that but for error things would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 n. 9 (2004). In assessing prejudice, this Court is obligated to consider the cumulative effect of the multiplicity of counsel's errors demonstrated in the record below. *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

First, with regard to trial counsel's failure to object to the State's impermissible commitment questions during voir dire, there is a reasonable probability that the result of the proceeding would have been different if trial counsel would have objected to the jurors making promises favorable to the State regarding how the jurors would assess punishment in the case. *Id*. at 694. Every member of the jury fundamentally guaranteed the State that they would not grant probation to Mr. Campbell, all the members of the jury promised the State that they would not consider Mr. Campbell's remorse

when assessing the punishment, and ten members of the jury assured the State that they would feel very comfortable assessing a lengthy prison sentence for Mr. Campbell. (2 RR 81-85). (2 RR 75-76, 81-85, 91- 95). If the impermissible commitment questions were properly objected to, the jurors would not have committed to how they would assess punishment; therefore, there is a reasonable probability that the jurors would not have sentenced Mr. Campbell to seventeen years in prison if trial counsel had objected to the impermissible commitment questions. *Id*.

Second, with regard to trial counsel's failure to object to the State's impermissible statements regarding parole eligibility, there is a reasonable probability that the proceeding would have been different, because the jurors would not have improperly considered the fact that Mr. Campbell would not serve the full amount of prison time when assessing Mr. Campbell's punishment. *Id*. The jury did not sentence Mr. Campbell to the maximum prison time allowed under the law; therefore it is very probable that if the jury was not operating under the impermissible belief that any sentence assessed would not be served in full, that the sentence assessed would have been less than seventeen years. *Id*.

Lastly, Regarding trial counsel's failure to investigate whether Mr. Campbell had the presence of marijuana or THC in his blood on the day of

the accident, there is a reasonable probability that the result of the proceedings below would have been different, because the State would not have been able to argue that Mr. Campbell was also intoxicated on marijuana the day of the accident, and attempted to hide his marijuana pipe because of such. (4 RR 65). During closing arguments, the State argued that,

"He's still smoking every day, but yet on that particular day he wasn't smoking. He wants y'all to believe that the pipe was ejected from the vehicle. If you look at the pictures, he wants you to believe a glass pipe was somehow ejected from his vehicle and landed perfectly unbroken through a fence. That doesn't make sense. So he wants y'all to believe that that was thrown over there by the vehicle accident and he wasn't smoking that day, but it doesn't really make sense with the evidence that was presented to you guys. He smokes every day except this day? " (4 RR 89).

If the Appellant's trial counsel had conducted an investigation, and had Mr. Campbell's blood specimen tested by a private expert to determine if Mr. Campbell's blood had the presence of marijuana of THC in it, then the claims by the State could been rebutted; therefore, there is a reasonable probability that the result of the proceeding would have been different because the jury would have known whether or not Mr. Campbell was being truthful about not smoking marijuana the day of the accident. (4 RR 64).

23

The present case presents in compelling terms "a breakdown in the adversarial process that our system counts on to produce just results." *Id*. at 696. "When a [reviewing] court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995); see also *Burnett v. State*, 88 S.W.3d 633, 638 (Tex.Crim.App. 2002). ("In cases of grave doubt as to harmlessness the [Appellant] must win."). Because this Court must have such grave doubt about whether the Appellant's trial counsel's multiple instances of objectively deficient conduct contributed to Mr. Campbell's conviction and punishment, it must grant Mr. Campbell a new trial on the issue of punishment. *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995).

For these reasons Mr. Campbell would respectfully request the Court to hold that the cumulative effect of his trial counsel's errors caused "a breakdown in the adversarial process that our system counts on to produce just results" sufficient "to undermine this Court's confidence in the outcome" of the Appellant's trial. *Strickland v. Washington*, 466 U.S. 668, 696 (1984). Mr. Campbell contends that if his trial counsel had discharged his duty below, there is a reasonable probability the result of the proceedings would have been different. *Id*. at 694.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Paul Daniel Campbell, prays this Honorable Court will reverse the judgment of conviction and or punishment below, Further, Paul Daniel Campbell prays that this Honorable Court will enter any other relief appropriate under the facts and the law.

Respectfully Submitted,

/s/ Amanda Erwin

_____

Amanda Erwin
The Erwin Law Firm, L.L.P.
109 East Hopkins Street, Suite 200
San Marcos, Texas 78666
Telephone: (512) 938-1800
Telecopier: (512) 938-1804
amanda@theerwinlawfirm.com
Attorney for Appellant
Paul Campbell
State Bar Number 24042936

**CERTIFICATE OF SERVICE**

Pursuant to TEX. R. APP. P. 9.5, I certify that of May 28, 2015, a copy of this motion was mailed via first class U.S. mail, to the following: Comal County District Attorney's Office, 150 N. Seguin Avenue, Suite 307, New Braunfels, Texas 78130.

/s/ Amanda Erwin

_____

Amanda Erwin

**CERTIFICATE OF COMPLIANCE STATING NUMBER OF
WORDS IN BRIEF**

Pursuant to Tex. R. App. P. 9.4(i), Appellant certifies that this

Appellate Brief contains only 5,978 words, and is therefore compliant with

the maximum word limitation allowed by the Honorable Court.


/s/ Amanda Erwin

_____

Amanda Erwin