

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00220-CR

CHRISTOPHER PATRICK FARR                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1433221D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury convicted Appellant Christopher Patrick Farr of assault on a family or household member by impeding breathing or circulation, found both allegations contained in the habitual offender notice true, and sentenced him to eighty years' confinement. *See* Tex. Penal Code Ann. §§ 12.42(d), 22.01(b)(2)(B) (West Supp. 2016). In three issues, Farr argues that the trial court

---

[1]*See* Tex. R. App. P. 47.4.

abused its discretion by overruling his objection to an improper commitment question during the State's voir dire and by sustaining the State's objection to a line of questioning that was intended to reveal the complainant's potential bias and motive to lie. We will affirm.

## II. BACKGROUND

Farr began a relationship with Deborah Brown sometime in March 2015. Brown lived with her brother, and Farr stayed over quite a lot, but in September 2015, Brown's brother asked her to leave. Farr and Brown eventually ended up living at the house of a friend—Ricky Griffith.

Farr and Brown's dating relationship took a "terrible turn" around mid-October 2015. Farr became angry at Brown while they were driving and assaulted her multiple times, explaining that she needed "discipline." Farr discovered that Brown had reported the incident to police, and for the next seven days, he kept Brown detained in their bedroom, refusing to let her out of his sight and forcing her to use a bucket as a toilet.

On the seventh day, "everything just went totally crazy," according to Brown. Farr—who had been awake for a number of days, was talking uncontrollably, and was convinced that Brown was cheating on him—allowed Brown to leave the bedroom and to use the bathroom in the house. When Brown walked by Griffith's room and said "hey" to someone, Farr became angry, rushed over to her, and began hugging her so tightly that she had difficulty breathing.

2

Farr then put his hands around Brown's throat and began choking her, causing her to pass out and to wet her pants.

When Brown awoke, she was in her bedroom and Farr was crying, explaining that he did not want to hurt her but that he had to discipline her. Farr then put his knee on Brown's chest and began choking her again, until someone banged on the door and said to stop because the police were on their way. The police arrived and arrested Farr.

### III. COMMITMENT QUESTION

Farr argues in his first issue that the trial court reversibly erred by overruling his objection to an improper commitment question that the State posed during its voir dire. The following exchange took place:

> [Prosecutor]: . . . If you believe it happened beyond a reasonable doubt and you believe the victim, are you going to require any sort of injuries or visible injuries before you find somebody guilty of the offense?
>
> [Prospective Juror]: No, because a certain amount of time has passed. It may not be possible.
>
> [Prosecutor]: Yeah. You don't know when the offense really happened in relation to the offense. But what if it had just happened? Bruises come up immediately?
>
> [Prospective Juror]: Not always.
>
> [Prosecutor]: You may or may not see something, right?
>
> [Prospective Juror]: Some people bruise easy. Some people don't.
>
> [Prosecutor]: Okay. Thank you sir. Anybody here in this first section thinking - - well let me take it a step further. *I showed y'all the elements of the offense earlier, right? I went through all those*

3

*things, the Defendant, certain date, all that kind of stuff. Given that that's what we have to prove,* there may be a lot of things that you might want to see, and a big one is police reports. I'm going to tell y'all, we're not allowed to admit the police reports into evidence. Okay? So you're not going to see police reports unless something really whacky happens. We may not have medical records. The victim doesn't want the Defendant prosecuted, do you think she's going to go to the hospital?

Prospective Jurors: No.

[Prosecutor]: Maybe not, right? May not have photographs. We may not have visible injuries, all these other things. This is where CSI makes my job very difficult.

*We may just have a witness testifying as to what happened to her. But your job is to evaluate the credibility of that witness and decide whether you believe her.*

*Is that good enough for y'all? Anybody feeling like they might need something more?* Of course you need evidence, *but testimony is evidence.* Okay? When I ask this question to a lot of jurors, they say well, Tim, I need proof. Testimony is proof. *The question becomes, do you believe that testimony. So is there anybody here in this first section thinking Tim, I'm going to need something more, or I can judge this case and decide whether I believe a person beyond a reasonable doubt without the medical records, without a videotape of the offense, without DNA and the CSI effect?*

[Defense Counsel]: I'm going to object. This is an improper commitment question, Your Honor.

The Court: That's overruled.

[Prosecutor]: Anybody here in this first section going to require more than what the law requires us to prove in those elements? Anybody? [Emphasis added.]

We review a trial court's ruling on an allegedly improper commitment question during voir dire for an abuse of discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).

4

Whether a voir dire question constitutes an improper commitment question involves several considerations. *See Standefer v. State*, 59 S.W.3d 177, 179–84 (Tex. Crim. App. 2001). First, the trial court must determine whether the question is a commitment question. *Id.* at 179. "Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Id.*

Second, if the question is a commitment question, the trial court must then determine whether it is a *proper* commitment question. *Id.* at 181. "When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard." *Id.* Thus, a commitment question is proper if one of the possible answers to the question gives rise to a valid challenge for cause. *Id.* at 182.

Finally, if the question does give rise to a valid challenge for cause, then the court must determine whether the question "contain[s] *only* those facts necessary to test whether a prospective juror is challengeable for cause." *Id.* (explaining that additional facts supplied beyond what is necessary to sustain a challenge for cause render improper what otherwise would have been a proper question).

Here, the challenged question was a commitment question because it inquired whether the prospective jurors could convict the defendant based on a particular set of facts—the testimony of the complaining witness. *See id.* at 179.

5

Although the question required a commitment, it was nevertheless proper. Generally, the testimony of a single eyewitness can be enough to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). Although a juror is free to determine what constitutes a reasonable doubt, and may require more than the testimony of a single witness before finding a fact proved beyond a reasonable doubt, the State may properly challenge a prospective juror when the juror would hold the State to a *higher* standard than beyond a reasonable doubt. *Coleman v. State*, 881 S.W.2d 344, 360 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1096 (1995). Indeed, a prospective juror may be challenged for cause if he possesses "a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." Tex. Code Crim. Proc. Ann. art. 35.16(b)(3) (West 2006).

Considering the extent of his comments in context, the prosecutor inquired whether the prospective jurors could evaluate the complainant's credibility and convict a defendant based on her testimony alone—*if* the testimony was sufficient to prove the defendant's guilt beyond a reasonable doubt—or whether anyone would additionally require the State to corroborate the complainant's testimony with other evidence, such as a videotape or DNA evidence. Because, under these circumstances, the law does not require such corroborating evidence to otherwise sustain a conviction, demanding that it be introduced would effectively hold the State to a higher burden of proof and, consequently, give rise to a valid challenge for cause for possessing "a bias or prejudice against

6

any phase of the law upon which the State is entitled to rely for conviction or punishment." *See* Tex. Code Crim. Proc. Ann. art. 35.16(b)(3); *Delacerda v. State*, 425 S.W.3d 367, 382 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (reasoning that a prospective juror who could not convict a defendant in the absence of "physical evidence," even if the State otherwise proved the elements of the offense beyond a reasonable doubt, was subject to valid challenge for cause); *Fierro v. State*, 969 S.W.2d 51, 59 (Tex. App.—Austin 1998, no pet.) (reasoning that prospective juror was subject to challenge for cause because he "require[d] a higher level of proof of intoxication than the law requires by being unable to convict in the absence of a breath test"); *see also Harris v. State*, 122 S.W.3d 871, 880 (Tex. App.—Fort Worth 2003, pet. ref'd) ("[T]he State is permitted to determine whether a prospective juror will require evidence the law does not require to convict a defendant.").

Finally, although the prosecutor injected a few facts into the question, he did so only insofar as he was attempting to determine whether any members of the venire panel would hold the State to a higher burden.[2] *See Harris*, 122 S.W.3d at 881.

We hold that the trial court did not abuse its discretion by overruling Farr's objection to the State's proper commitment question at voir dire. We overrule his first issue.

---

[2]The prosecutor's comments were ultimately proved to be prescient. In his opening statement, defense counsel said, "There is no physical evidence that [Brown] was ever choked, just her word."

7

## IV. EVIDENTIARY RULING

In his second and third issues, Farr argues that the trial court abused its discretion by prohibiting him from questioning Brown about the circumstances surrounding the apparent theft of his vehicle after he was arrested. Farr contends that he was denied his right to confrontation as guaranteed by the Sixth Amendment and that the excluded evidence was relevant to show that Brown had a "potential bias and motive to lie."

The following exchange took place during trial:

[Defense Counsel]: All right. Do you have any idea why Ricky Griffith would run away when the cops showed up?

[Brown]: No, sir.

[Defense Counsel]: You don't? After all this happened, I think you said [Farr] had a vehicle, right, that he was driving around in?

[Brown]: Ricky Griffith?

[Defense Counsel]: No, I mean - - I'm sorry, not - - [Farr] had a vehicle?

[Brown]: Yes.

[Defense Counsel]: Okay. And it was parked, I don't know, the place on Arch Street the day he was arrested?

[Brown]: Yes.

[Defense Counsel]: And did you take his vehicle?

[Prosecutor]: Your Honor, I'm going to object to relevance at this point.

The Court: All right. That's sustained.

[Defense Counsel]: Did Ricky Griffith take that vehicle?

[Brown]: Ricky Griffith? No.

[Prosecutor]: Your Honor, I'm going to object to this whole line of questioning about this vehicle.

The Court: All right. Let me see y'all a minute. Let's take about a 10 minute break, Ladies and Gentlemen.

(Open court, Defendant present, no jury)

The Court: All right. Why are we going in this direction? What are we talking about?

[Defense Counsel]: Well, he left - - his vehicle was left there at - - he's reported that - - he reported it stolen, but it was taken away by somebody. Only two people were there, her and Ricky Griffith. He made a statement that - - he's not here to be cross-examined. What's motive for him making that statement? Taking the vehicle could be.

The Court: Who made the statement?

[Defense Counsel]: Ricky Griffith on the 911 tape.

[Prosecutor]: What statement did he make?

[Defense Counsel]: Well, isn't he [the] one that called on 911?

[Prosecutor]: He is, yeah.

[Defense Counsel]: Yeah.

[Prosecutor]: What statement are you saying he made?

The Court: I didn't hear anything about a car or anything.

[Defense Counsel]: Well, he didn't say anything about a car, but he made the statement being - - he was being - - there was an assault going on and if he had the guy taken off, arrested, you could take his vehicle.

9

The Court:   I still - -

[Defense Counsel]:   These aren't the nicest people in the world.

The Court:   I understand, but I don't.

[Defense Counsel]:   If one goes to jail, they divide up all their property.

The Court:   But I still don't know the relevance of all this.

. . . .

The Court:   Her being assaulted.

[Defense Counsel]:   Is to show - - is to show that that 911 call could have been motivated by Mr. Griffith wanting to take [Farr's] vehicle.  He was - -

The Court:   You got me.  I'm lost here.  I don't see where that has anything to do - -

[Prosecutor]:   And beyond that it's getting into speculation about what Ricky Griffith was thinking and that's not relevant.  I mean, it's speculation for this witness anyway.

[Defense Counsel]:   Well, I was going to ask her what happened to the vehicle, if she knows.

[Prosecutor]:   How is that relevant to the assault?

The Court:   See, that's what we're talking about.  I need the relevance to the assault.  Taking a vehicle has no relevance to the assault.

[Defense Counsel]:   Well, there's - - what's the motive to tell the false story is that they wanted his vehicle.

The Court:   No, I don't see where we're even close to that, [Defense Counsel].  What else have you got?

Defense counsel later made the following offer of proof outside the jury's presence:

> Okay. Defendant makes this Bill of Exceptions. Defendant - - it's previously been ruled that the subject of the motor vehicle owned by the Defendant was irrelevant to this case. Defendant was attempting to show the motor vehicle was taken from property on Arch Street when he was arrested, probably by Ricky Griffin (sic) and to show a motive for Ricky Griffin (sic) to make the 911 call, one of the 911 calls leading to Defendant's arrest. . . .

Farr lodged no Confrontation Clause objection, nor was such a complaint apparent from the context of the above exchanges. Therefore, he failed to preserve his second issue for appellate review. *See* Tex. R. App. P. 33.1(a); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (holding that Confrontation Clause argument was not preserved). We overrule Farr's second issue.

As for Farr's relevance contention, insofar as Farr's argument on appeal (that the evidence was admissible to show that *Brown* had a potential bias and motive to lie) does not comport with the contention that he raised at trial (that *Ricky Griffith* had a motive to call 911), his third issue is also forfeited. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (requiring argument on appeal to comport with objection made at trial). But even if Farr's third issue was preserved, the evidence demonstrates that Griffith called 911, not Brown. Thus, the trial court could have reasonably concluded that Griffith's purported interest in obtaining Farr's vehicle was not relevant to whether Farr had choked Brown. *See* Tex. R. Evid. 401. Further, the trial court could have also exercised its wide

11

discretion to limit Farr's cross-examination of Brown on the basis that the excluded evidence was, at most, only marginally relevant and did not necessarily indicate that Brown had a reason to testify falsely. *See Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010), *cert. denied*, 562 U.S. 1142 (2011) ("The constitutional right to cross-examine concerning the witness's potential bias or prejudice does not include 'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'") (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986)). We overrule Farr's third issue.

## V. Conclusion

Having overruled Farr's three issues, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: MEIER, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 23, 2017